

FILED
CLERK, U.S. DISTRICT COURT

SEP 17 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### June 2009 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 09- 00939 |
| Plaintiff, ) | I N D I C T M E N T |
| v. ) | [18 U.S.C. § 1962(d): Racketeer |
| RUDY AGUIRRE, JR., ) | Influenced and Corrupt |
| aka "Lil Psycho," ) | Organizations Conspiracy; 18 |
| RICHIE AGUIRRE, ) | U.S.C. § 1962(c): Racketeer |
| aka "Lil Pee Wee," ) | Influenced and Corrupt |
| RUDY AGUIRRE, SR., ) | Organizations; 18 U.S.C. |
| DANIEL SOLIS, ) | § 1959: Violent Crime in Aid of |
| aka "Lil Trigger," ) | Racketeering; 21 U.S.C. § 846: |
| ANTHONY RODRIGUEZ, ) | Conspiracy to Distribute |
| aka "Kid," ) | Cocaine Base in the Form of |
| CARLOS VELASQUEZ, ) | Crack Cocaine, Methamphetamine, |
| aka "Stoney," ) | Cocaine, and Heroin; 21 U.S.C. |
| GUILLERMO HERNANDEZ, ) | §§ 841(a)(1), 841(b)(1)(A), |
| aka "Flea," ) | 841(b)(1)(B): Possession with |
| ARMANDO ALBARRAN, ) | Intent to Distribute Cocaine |
| aka "Chivo," ) | Base in the Form of Crack |
| ROBERTO SALAZAR, ) | Cocaine and Methamphetamine; 18 |
| aka "Scanless," ) | U.S.C. §§ 924(c)(1), 924(j)(1): |
| ROBERTO DE LA CRUZ, ) | Use of a Firearm in Furtherance |
| aka "Bosco," ) | of a Crime of Violence or Drug- |
| SAM SALINAS, ) | Trafficking Crime; 18 U.S.C. |
| aka "Stalker," ) | § 922(g)(1): Felon in |
| SAM VEGA, ) | Possession of Firearms; 18 |
| aka "Fox," ) | U.S.C. § 922(g)(5): Illegal |
| CARLOS RENTERIA, ) | Alien in Possession of a |
| aka "Rider," ) | Firearm; 18 U.S.C. §§ 1956(h), |
| RICKY AGUIRRE, ) | 1956(a)(1): Conspiracy to |
| aka "Sneeks," ) | Launder Money; 18 U.S.C. |
| ANDRE UPSHAW, ) | § 982(a)(1) and 21 U.S.C. |
| aka "Dre," ) | § 853(a): Criminal Forfeiture] |



CB;AAN:VOCS

PETE CORDERO,                          )
RICHARD AGUIRRE,                       )
   aka "Halfman,"                    )
LUIS MARTINEZ,                         )
   aka "Temper,"                     )
RAUL SORIANO,                          )
   aka "Bouncer,"                    )
CESAR CRUZ,                            )
   aka "Hans,"                       )
IVAN VALDEZ,                           )
   aka "Bashful,"                    )
RAMIRO PEREZ,                          )
   aka "Travieso,"                   )
MARY ABITIA,                           )
   aka "Coneja,"                     )
JAIME BARCENA,                         )
   aka "Clown,"                      )
LEONARD ERENTREICH,                    )
   aka "Fatal,"                      )
KRISTOFFER FAJARDO,                    )
   aka "Youngster,"                  )
CONNIE CORDERO,                        )
EDDIE PEREZ,                           )
   aka, "Creeper,"                   )
FREDDY BAILON,                         )
   aka, "Thief,"                     )
JOSE MARRERO,                          )
   aka, "Cloudy,"                    )
   aka, "Risky,"                     )
ESTEBAN REYES,                         )
   aka "Blacky,"                     )
VICTOR HERNANDEZ,                      )
   aka "Serio,"                      )
SILVIA PINTO,                          )
JOSUE SILLAS,                          )
   aka "Flaco,"                      )
YVONNE GARCIA,                         )
   aka "Perica,"                     )
ANGEL OLEA,                            )
GABRIEL PINA,                          )
   aka "Sweepy,"                     )
JORGE PINA,                            )
   aka "Grinch,"                     )
RALPH PINA,                            )
   aka "Sporty,"                     )
LOUIE MORA,                            )
   aka "Suspect,"                    )
GABRIEL RAMOS,                         )
   aka "Jekyl,"                      )
YSIDRO BARAJAS                         )
   aka "Crow,"                       )
MARIO RECINOS,                         )
   aka "Tricky,"                     )
TAMMY ARMSTRONG,                       )

```
 1   DAVID MANCIA,                        )
        aka "Salvy,"                      )
 2   BONIFACIO NUNEZ,                     )
        aka "Lucky,"                      )
 3   LIZETE MIRANDA,                      )
     CELESTE RENTERIA,                    )
 4   CLAUDIO PELAYO,                      )
     HUMBERTO GABRIEL,                    )
 5      aka "Beetle,"                     )
     DAVID SHUMILO,                       )
 6      aka "Russian Boy,"               )
     JESSICA PEREZ,                       )
 7   BARDO LUIS AVILES,                   )
        aka "Rowdy,"                      )
 8   JOSEPH SAGARRA,                      )
        aka "Shadow,"                     )
 9   ANTONIO MARTINEZ,                    )
        aka "Pony Boy,"                   )
10   NORBERTO SALAZAR,                    )
        aka "Rascal,"                     )
11   RAYMOND GONZALEZ,                    )
     DAVID DE LA CRUZ,                    )
12      aka "Rebel,"                      )
     JOSE ANGUIANO,                       )
13      aka "Drowsy,"                     )
     RICHARD PENA,                        )
14      aka "Problem,"                    )
     DAVID ALVARADO,                      )
15      aka "Stiney,"                     )
     WILFREDO ABITIA,                     )
16      aka "Lil Maniac,"                 )
     GONZALO PINEDA,                      )
17      aka "Bad Boy,"                    )
     ROBERT VELASCO,                      )
18      aka "Speedy,"                     )
     ALEX CHAVIRA,                        )
19      aka "Slugger,"                    )
     DANIEL CRUZ,                         )
20      aka "Ishi,"                       )
     JUSTIN CARLIN,                       )
21      aka "Flea,"                       )
     MARIA REAL,                          )
22      aka "Shadow,"                     )
     CHRISTIAN GONZALEZ,                  )
23      aka "Faded,"                      )
     JOE HERNANDEZ,                       )
24      aka "Kiki,"                       )
     OSVALDO LOPEZ,                       )
25   JEREMY TREJO,                        )
        aka "Lucky,"                      )
26   REGINA MARTINEZ,                     )
     JUAN BARAJAS,                        )
27      aka "Tiny,"                       )
     DANIEL TRUJILLO,                     )
28
```

3

```
 1  MANUEL MAGANA,                    )
         aka "Porks,"                 )
 2  PATRICIA PARTIDA,                 )
    ANAGEL DOMINGA,                   )
 3  VIVIAN MACIAS,                    )
    ROSE MACIAS,                      )
 4  NANCY AGUIRRE,                    )
    VANESSA ARELLANO,                 )
 5  ARACELI ALBARRAN,                 )
    BLASA REAL,                       )
 6  MICHAEL BROMAN,                   )
    McNEAL MUTUC,                     )
 7  CLEMENTE ALQUICIRA,               )
         aka "Pigeon," and            )
 8  JUAN PEDRO RODRIGUEZ,             )
         aka "Juan Flores,"           )
 9                                    )
                     Defendants.      )
10  _____   )
```

11       The Grand Jury charges:

12       <u>GENERAL ALLEGATIONS</u>

13       1.   At all relevant times, defendants RUDY AGUIRRE, JR.,

14  also known as ("aka") "Lil Psycho" ("RUDY AGUIRRE, JR."), RICHIE

15  AGUIRRE, aka "Lil Pee Wee" ("RICHIE AGUIRRE"), RUDY AGUIRRE, SR.,

16  ("RUDY AGUIRRE, SR."), DANIEL SOLIS, aka "Lil Trigger" ("SOLIS"),

17  ANTHONY RODRIGUEZ, aka "Kid" ("RODRIGUEZ"), CARLOS VELASQUEZ, aka

18  "Stoney" ("VELASQUEZ"), GUILLERMO HERNANDEZ, aka "Flea" ("G.

19  HERNANDEZ"), ARMANDO ALBARRAN, aka "Chivo" ("ALBARRAN"), ROBERTO

20  SALAZAR, aka "Scanless" ("R. SALAZAR"), ROBERTO DE LA CRUZ, aka

21  "Bosco" ("R. DE LA CRUZ"), SAM SALINAS, aka "Stalker"

22  ("SALINAS"), SAM VEGA, aka "Fox" ("VEGA"), CARLOS RENTERIA, aka

23  "Rider" ("C. RENTERIA"), RICKY AGUIRRE, aka "Sneeks" ("RICKY

24  AGUIRRE"), ANDRE UPSHAW, aka "Dre" ("UPSHAW"), PETE CORDERO ("P.

25  CORDERO"), RICHARD AGUIRRE, aka "Halfman" ("RICHARD AGUIRRE"),

26  LUIS MARTINEZ, aka "Temper" ("L. MARTINEZ"), RAUL SORIANO, aka

27  "Bouncer" ("R. SORIANO"), CESAR CRUZ, aka "Hans" ("C. CRUZ"),

28  IVAN VALDEZ, aka "Bashful" ("I. VALDEZ"), RAMIRO PEREZ, aka

                                  4

1    "Travieso" ("R. PEREZ"), MARY ABITIA, aka "Coneja" ("M. ABITIA"),

2    JAIME BARCENA, aka "Clown" ("BARCENA"), LEONARD ERENTREICH, aka

3    "Fatal" ("ERENTREICH"), KRISTOFFER FAJARDO, aka "Youngster"

4    ("FAJARDO"), CONNIE CORDERO ("C. CORDERO"), EDDIE PEREZ, aka

5    "Creeper" ("E. PEREZ"), FREDDY BAILON, aka "Thief" ("BAILON"),

6    JOSE MARRERO, aka "Cloudy," aka "Risky" ("MARRERO"), ESTEBAN

7    REYES, aka "Blacky" ("REYES"), VICTOR HERNANDEZ, aka "Serio" ("V.

8    HERNANDEZ"), SILVIA PINTO ("PINTO"), JOSUE SILLAS, aka "Flaco"

9    ("J. SILLAS"), YVONNE GARCIA, aka "Perica" ("Y. GARCIA"), ANGEL

10   OLEA ("OLEA"); GABRIEL PINA, aka "Sweepy" ("G. PINA"), JORGE

11   PINA, aka "Grinch" ("J. PINA"), RALPH PINA, aka "Sporty" ("R.

12   PINA"), LOUIE MORA, aka "Suspect" ("MORA"), GABRIEL RAMOS, aka

13   "Jekyl" ("G. RAMOS"), YSIDRO BARAJAS, aka "Crow" ("Y. BARAJAS"),

14   MARIO RECINOS, aka "Tricky" ("RECINOS"), TAMMY ARMSTRONG

15   ("ARMSTRONG"), DAVID MANCIA, aka "Salvy" ("D. MANCIA"), BONIFACIO

16   NUNEZ, aka "Lucky" ("B. NUNEZ"), LIZETE MIRANDA ("MIRANDA"),

17   CELESTE RENTERIA ("CELESTE RENTERIA"), CLAUDIO PELAYO ("PELAYO"),

18   HUMBERTO GABRIEL, aka "Beetle" ("GABRIEL"), DAVID SHUMILO, aka

19   "Russian Boy" ("SHUMILO"), JESSICA PEREZ ("J. PEREZ"), BARDO LUIS

20   AVILES, aka "Rowdy" ("AVILES"), JOSEPH SAGARRA, aka "Shadow"

21   ("SAGARRA"), ANTONIO MARTINEZ, aka "Pony Boy" ("A. MARTINEZ"),

22   NORBERTO SALAZAR, aka "Rascal" ("N. SALAZAR"), RAYMOND GONZALEZ

23   ("R. GONZALEZ"), DAVID DE LA CRUZ, aka "Rebel" ("D. DE LA CRUZ"),

24   JOSE ANGUIANO, aka "Drowsy" ("J. ANGUIANO"), RICHARD PENA

25   ("RICHARD PENA"), DAVID ALVARADO, aka "Stiney" ("D. ALVARADO"),

26   WILFREDO ABITIA, aka "Lil Maniac" ("W. ABITIA"), GONZALO PINEDA,

27   aka "Bad Boy" ("G. PINEDA"), ROBERT VELASCO, aka "Speedy"

28   ("VELASCO"), ALEX CHAVIRA, aka "Slugger" ("CHAVIRA"), DANIEL

CRUZ, aka "Ishi" ("D. CRUZ"), JUSTIN CARLIN, aka "Flea"
("CARLIN"), MARIA REAL, aka "Shadow" ("M. REAL"), CHRISTIAN
GONZALEZ, aka "Faded" ("C. GONZALEZ"), JOE HERNANDEZ, aka "Kiki"
("J. HERNANDEZ"), OSVALDO LOPEZ ("O. LOPEZ"), JEREMY TREJO, aka
"Lucky" ("TREJO"), REGINA MARTINEZ ("R. MARTINEZ"), JUAN BARAJAS,
aka "Tiny" ("J. BARAJAS"), DANIEL TRUJILLO ("TRUJILLO"), MANUEL
MAGANA, aka "Porks" ("MAGANA"), PATRICIA PARTIDA ("PARTIDA"),
ANAGEL DOMINGA ("DOMINGA"), VIVIAN MACIAS ("V. MACIAS"), ROSE
MACIAS ("R. MACIAS"), NANCY AGUIRRE ("N. AGUIRRE"), VANESSA
ARELLANO ("V. ARELLANO"), ARACELI ALBARRAN ("ARACELI ALBARRAN"),
BLASA REAL ("B. REAL"), CLEMENTE ALQUICIRA, aka "Pigeon"
("ALQUICIRA"), and JUAN PEDRO RODRIGUEZ, aka "Juan Flores" ("JUAN
PEDRO RODRIGUEZ"), and others, were members and associates of an
organization engaged in, among other things, murder, conspiracy
to commit murder, attempted murder, conspiracy to traffic in
narcotics, narcotics-trafficking, robbery, extortion, money
laundering, and witness intimidation.  At all relevant times,
this organization, known as the "Avenues" gang, which includes
its "Drew Street" gang members, operated in the Central District
of California and elsewhere.  The Avenues gang, including its
leadership, membership, and associates, constituted an
"enterprise," as defined by Title 18, United States Code, Section
1961(4), that is a group of individuals associated in fact.  The
enterprise engaged in, and its activities affected, interstate
and foreign commerce.  The enterprise constituted an ongoing
organization whose members functioned as a continuing unit for a
common purpose of achieving the objectives of the enterprise.

BACKGROUND OF THE AVENUES STREET GANG

2.    The Avenues gang is a multi-generational street gang
that was formed in the 1940s and claims the area roughly between
Colorado Boulevard to the north, the 3200 Block of Griffin Street
to the east, San Fernando Road to the south, and Drew Street to
the west as its "territory" in Northeast Los Angeles.  The
Avenues gang has been divided into a number of smaller groups, or
"cliques," based on geography and associations in the
neighborhood controlled by the gang.  The original Avenues
cliques were the Cypress Avenues, the Avenues Assassins, Avenues
43rds, and most recently the Drew Street clique.  After its
formation was formally authorized by the Mexican Mafia in August
2007, the Drew Street clique became the most active and violent
clique within the Avenues gang and produced the most significant
revenues for the Mexican Mafia from narcotics trafficking,
robbery, the extortion of local business owners, "staged" car
accidents, identity theft, and other crimes.  Revenues in the
form of "taxed" proceeds from the crimes of the organization were
collected by Avenues leaders and paid to Mexican Mafia leaders
who directed, and continue to direct, the activities of the
Avenues gang from within the California State Prison system, in
particular the California State Prison at Pelican Bay,
California.  In June 2008, the federal investigation and
prosecution of the Drew Street clique of the Avenues gang
dismantled the Drew Street clique and removed its leadership, in
particular Francisco "Pancho" Real, Maria "Chata" Leon, and the
Real/Leon family.  After the federal indictment, Mexican Mafia
leaders have attempted to re-organize and re-establish the

7

Avenues presence in Northeast Los Angeles by ending the "clique"
divisions within the gang and naming new leaders of the Avenues
gang, specifically defendants VELASQUEZ, RODRIGUEZ, and, later,
SOLIS.  Mexican Mafia leaders meet with Avenues gang leaders at
California State Prison facilities and speak by telephone in
order to instruct and direct the crimes of the Avenues gang, and
to coordinate the collection of illegal proceeds from gang
activity.

3.  Avenues gang members generally identify one another
through the use of hand gestures, or gang "signs."  They
typically display the letter "A" for Avenues or the interlocking
"L-A" for "Los Avenidas."  Members refer to one another as
"skulls" and frequently wear the "Skull Camp" or "Skull Wear"
brand clothing to identify themselves as members and associates
of the Avenues gang.  The clothing depicts images of human skulls
in various forms, such as a human skull depicted as part of the
logo for the Oakland Raiders football team and, oftentimes, the
depiction of a human skull wearing a fedora hat, with a bullet
hole in the side of the skull.  Gang members also frequently wear
baseball caps for teams such as the Oakland Athletics, Atlanta
Braves, and Los Angeles Dodgers, whose team insignia includes an
"A" or "L-A," for Avenues and Los Avenidas.  Gang tattoos, gang
names, and slogans are also used to identify members and
territory controlled by the gang.

4.  The Avenues gang also uses spray-painted "tagging" to
demonstrate its control of its neighborhoods to rival gang
members and the local community.  Gang "tagging" frequently
appears on street signs, walls, buildings, and portions of the

110 Freeway, Interstate 5, and Highway 2 in the areas controlled
by the gang.   Members will also often use the number 13 in
various forms (i.e., 13, X3, or XIII) to demonstrate loyalty to
the Mexican Mafia ("m" being the 13th letter in the alphabet) and
to signal that the gang has "sureno" (Southern California)
loyalty.   The letters "NELA" are used to identify Northeast Los
Angeles gang members, and the number 187 is frequently used by
the gang to take "credit" for a murder that has been committed by
the gang.   "Tagging" is used in this way to issue challenges to
rival gang members and to communicate among Avenues gang members.
More importantly, it is a public demonstration of the authority
of the gang, because it not only identifies territory claimed by
the Avenues gang to rival gang members, but also serves as a
warning or means to terrorize members of the public and law-
abiding residents of the neighborhoods with threats that the
neighborhood is under the control of the Avenues gang.

    5.    Persons living in the neighborhoods controlled and
"tagged" by the Avenues gang have had to live with the knowledge
that they may be subject to violent retaliation, even death, if
they try to remove or clean the gang's marks from their buildings
and homes or try to remove pairs of sneakers that are frequently
thrown across telephone and power lines as a display of gang
control of the neighborhood.   Those actions would be seen as
defying the gang's authority and its control over the
neighborhoods it has claimed.   The gang's tactics, which include
wearing "Skull Camp" clothing, shaved heads, display of weapons,
tattoos, "tagging," and even posting items on websites, are
designed to intimidate and terrorize the residents of the

1  neighborhoods controlled by the Avenues gang.  In addition,
2  residents in the neighborhood have been attacked by Avenues gang
3  members for maintaining security systems and cameras in the
4  neighborhoods.

5      6.    As part of the gang's control over neighborhoods,
6  Avenues gang members direct violent attacks against law
7  enforcement officers and brag about those attacks in Internet
8  communications.  In particular, Avenues gang members and leaders
9  post antagonistic attacks directed at law enforcement on Internet
10  websites, such as "Fuck the police," and mottos, including
11  "Avenidas don't get chased by the cops.  We chase them."  As to
12  the general public, Avenues gang members warn, "Avenidas don't
13  just hurt people.  We kill them."  Threats of violence against
14  law enforcement have been repeatedly demonstrated in armed
15  attacks by Avenues gang members on law enforcement officers,
16  including a February 21, 2008 attack in which Avenues gang
17  members opened fire on Los Angeles Police Department ("LAPD")
18  officers with handguns and an assault rifle, and an August 2,
19  2008 attack in which Avenues gang members murdered Los Angeles
20  County Sheriff's Deputy Juan Escalante in front of his home in
21  Cypress Park.

22      7.    The organization is also hostile to the presence of
23  African-Americans in Avenues gang territory.  Neighborhoods
24  controlled by the Avenues gang are frequently "tagged" with
25  racist threats directed against African-Americans that are
26  intended to intimidate African-Americans and prevent African-
27  Americans from living in the neighborhood.  Avenues gang members
28  also confront African Americans with threats of violence and

1  murder in order to intimidate and prevent African-Americans from

2  residing in or entering neighborhoods controlled by the Avenues

3  gang.

4      8.    The Avenues gang is continually engaged in the

5  distribution of cocaine base in the form of cocaine, crack

6  cocaine ("crack cocaine"), methamphetamine, heroin and other

7  narcotic drugs.  In particular, Avenues gang leaders obtain

8  narcotic drugs and control the distribution of narcotic drugs by

9  providing "street-level" distribution amounts (typically a few

10 grams of crack cocaine at a time) to numerous gang members and

11 associates in the area controlled by the gang.  Avenues gang

12 leaders, in turn, collect extortion payments, referred to as

13 "taxes" or "rent," from drug traffickers in the neighborhood.

14 Avenues gang members also extort payment from persons who live

15 and maintain businesses in the area controlled by the gang under

16 threat of physical violence, including the threat that

17 individuals who do not adhere to the gang's demands will be

18 "green-lighted" by the Mexican Mafia, that is, they will be

19 targeted for murder.  The authority to collect "taxes" represents

20 an elevated position within the gang, one that is authorized by

21 the Mexican Mafia leaders as a "shot-caller."  The "shot-caller"

22 who has authority to collect "taxes" may then delegate the

23 responsibility for collections to other gang members under his

24 authority.

25     9.    Avenues gang members maintain a ready supply of

26 firearms, including handguns, shotguns, automatic assault rifles,

27 and machineguns, in order to enforce the authority of the gang.

28 Such weapons typically are stolen or unregistered, so that their

                              11

1  use cannot be readily connected to the gang member who either

2  used the weapon or maintained it.  Weapons often are discarded or

3  destroyed after having been used to commit acts of violence on

4  behalf of the organization.  Therefore, gang leaders frequently

5  need to maintain a source of supply for additional unregistered

6  or non-traceable firearms.  The Avenues gang also controls the

7  activities of its members and enforces its authority and internal

8  discipline by killing, attempting to kill, conspiring to kill,

9  assaulting, and threatening its own members or others who would

10 present a threat to the enterprise.  Avenues gang members and

11 associates typically continue to plan and execute crimes even

12 after arrests and during periods of incarceration, by telephone

13 calls from inside detention facilities, prison notes (known as

14 "kites") and meetings among inmates within an institution, where

15 they coordinate offenses to be carried out within the

16 institutions and upon their release from custody.

17     10.  Leaders of the Avenues gang recruit and initiate

18 juveniles to join the gang and direct them to commit acts of

19 violence and drug-trafficking crimes on behalf of the gang.  New

20 members frequently are recruited through their participation in a

21 younger "tagging" unit or from a different sect of the larger

22 organization.  New members ordinarily are then "jumped in" to the

23 gang.  This initiation process ordinarily requires that the new

24 member is physically beaten by senior, established members of the

25 gang and must demonstrate his resilience during the beating.  The

26 new member is then expected to put in "work" for the gang, which

27 includes the distribution of narcotics, "hunting" rival gang

28 members, "posting up" in the neighborhood (acting as a "look-out"

1  to alert members to the presence of law enforcement), and

2  "tagging" in the neighborhood.

3      11.  Females are commonly disparaged and addressed

4  derisively in the gang.  However, female members and associates

5  play a vital role in the operation of the Avenues gang and its

6  relationship with the Mexican Mafia.  Female associates are

7  frequently active in narcotics trafficking, weapons distribution,

8  the maintenance of cellular telephones, and the collection and

9  transfer of "tax" payments and narcotics proceeds.  Female

10  associates are frequently relied on to smuggle narcotics into the

11  state penitentiaries and provide cellular telephones to gang

12  members in and out of custody.  Female associates also play an

13  integral role in directing and maintaining communications within

14  the organization, in particular, communications with incarcerated

15  gang members and leaders of the organization, as well as the

16  distribution of collected drug proceeds and "taxed" payments from

17  the neighborhood.

18      12.  Avenues gang members enforce the authority of the gang

19  to commit its crimes by directing acts of violence and

20  retaliation against non-compliant drug-traffickers and rival gang

21  members, as well as non-compliant members.  Gang members

22  frequently destroy surveillance cameras installed in the

23  neighborhood pursuant to court orders and to protect the

24  neighborhood from the crimes of the Avenues gang.  Avenues gang

25  members also commonly threaten witnesses whom they suspect might

26  testify or provide information to law enforcement about the

27  crimes committed by the gang, or other public officers, such as

28  school teachers or fire department officers who might come into

13

1  conflict with the goal of the Avenues gang to control and

2  terrorize the neighborhoods in Northeast Los Angeles.

3               MEXICAN MAFIA AUTHORITY FOR THE AVENUES

4      13.  The Avenues gang is loyal and committed to the "Mexican

5  Mafia," also known as "La Eme."  The Mexican Mafia is a prison

6  gang that was organized within the California State Prison system

7  in order to control and direct the activities of Southern

8  California street gangs.  "Made" members of the Mexican Mafia

9  have assumed authority for different regions in Southern

10  California.  Typically, a "made" member is an inmate within the

11  California State Prison system and exercises his control and

12  direction over the region from within the state prison facility

13  where he is housed.  The Mexican Mafia leaders issue directions

14  and orders, including orders to kill rival gang members, members

15  of law enforcement, and members of the public, which are referred

16  to as "green-lights."  Those orders are to be executed by Avenues

17  gang members and are understood by Avenues gang members as

18  opportunities to gain elevated status within the organization or

19  potentially become a "made" member of the organization.

20      14.  The Mexican Mafia has established rules to govern acts

21  of violence committed by local street gang members, including

22  Avenues gang members.  The Mexican Mafia thus requires Avenues

23  gang members to adhere to protocols for the conduct of violent

24  attacks, narcotics trafficking, and murders, including the

25  issuance of "green light" authorizations for murder.  Failure to

26  adhere to Mexican Mafia rules can lead to the issuance of a

27  "green light," directing an attack on the offending member, or

28  the requirement that money be paid.  "Green lights" are also

                                    14

frequently issued in retaliation for a perceived "disrespect" to a Mexican Mafia leader, to punish the unauthorized collection of "tax" payments in a neighborhood controlled by the Avenues gang, or to sanction individuals who traffic in narcotics without the gang's authorization or without paying the required tax to the Avenues and Mexican Mafia.

15. Mexican Mafia and Avenues gang members and associates regularly exploit prison visits, telephone calls, policies concerning letter-communications with attorneys, and prison monetary accounts in order to generate income from narcotics trafficking and other crimes of the enterprise, so as to promote the criminal enterprise and direct the operation of the Avenues gang from within the California State Prison system. Mexican Mafia leaders also require weekly payments from prisoners incarcerated in the Los Angeles County Jail system.

16. Avenues gang leaders extort money from local drug traffickers, members of other gangs, prostitutes, residents, and persons who maintain businesses in the area controlled by the gang. A portion of the "taxes" collected by the Avenues gang leaders is then paid to the Mexican Mafia leadership incarcerated within the California State Prison system. Avenues gang members also raise funds for the organization by conducting armed home-invasion robberies, in which they target individuals believed to maintain large sums of cash or valuables in their homes.

## LEADERSHIP OF THE MEXICAN MAFIA

17. Currently three Avenues gang members are also validated Mexican Mafia members. They are Mexican Mafia Member #1, Mexican Mafia Member #3, and Alex "Pee Wee" Aguirre, and they have

15

1  authority over Northeast Los Angeles, which is the territory
2  controlled by the Avenues gang.  The Mexican Mafia members use
3  Mexican Mafia leaders and associates, including defendants RUDY
4  AGUIRRE, JR., RICHIE AGUIRRE, RUDY AGUIRRE, SR., and P. CORDERO,
5  to communicate orders and authorizations to Avenues gang leaders
6  and members, and to receive information about the activities of
7  the Avenues gang.

8                     PURPOSES OF THE ENTERPRISE

9       18.  The purposes of the Avenues gang, include, but are not
10 limited to, the following:

11           a.  Enriching members of the Avenues gang and Mexican
12 Mafia through, among other things, the control of and
13 participation in the distribution of narcotics in the territory
14 controlled by the Avenues gang.

15           b.  Maintaining the control and authority of the
16 Avenues gang over the neighborhoods it controls, often through
17 threats and acts of violence.

18           c.  Preserving, protecting, and expanding the power of
19 the Avenues gang through the use of intimidation, violence,
20 threats of violence, assault, and murder.

21           d.  Promoting and enhancing the authority of the
22 Avenues gang members and associates.

23              THE MEANS AND METHODS OF THE ENTERPRISE

24      19.  The means and methods by which the defendants and their
25 co-racketeers conduct and participate in the conduct of the
26 affairs of the Avenues gang include:

27           a.  Members of the Avenues gang commit, attempt, and
28 threaten to commit acts of violence to protect and expand the

                                 16

1   enterprise's criminal operation, including assaults, murder,

2   intimidation and threats of violence directed against rival gang

3   members, members of law enforcement, and witnesses in criminal

4   cases.

5          b.   Members of the Avenues gang promote a climate of

6   fear through acts of violence and threats to commit acts of

7   violence.

8          c.   To enforce the authority of the Avenues gang,

9   members use the enterprise to murder, attempt to murder, assault,

10  and threaten those who pose a threat to the enterprise.

11         d.   Participants in the Avenues gang engage in

12  trafficking controlled substances as a means to generate income.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE

[18 U.S.C. § 1962(d)]

1.    Paragraphs One through Nineteen of the General Allegations are re-alleged and incorporated by reference as though fully set forth herein.

2.    Beginning on a date unknown, and continuing to on or about September 17, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants RUDY AGUIRRE, JR., RICHIE AGUIRRE, RUDY AGUIRRE, SR., SOLIS, RODRIGUEZ, VELASQUEZ, G. HERNANDEZ, ALBARRAN, R. SALAZAR, R. DE LA CRUZ, SALINAS, VEGA, C. RENTERIA, RICKY AGUIRRE, UPSHAW, P. CORDERO, RICHARD AGUIRRE, L. MARTINEZ, R. SORIANO, C. CRUZ, I. VALDEZ, R. PEREZ, M. ABITIA, BARCENA, ERENTREICH, FAJARDO, C. CORDERO, E. PEREZ, BAILON, MARRERO, REYES, V. HERNANDEZ, PINTO, J. SILLAS, Y. GARCIA, OLEA, G. PINA, J. PINA, R. PINA, MORA, G. RAMOS, Y. BARAJAS, RECINOS, ARMSTRONG, D. MANCIA, B. NUNEZ, MIRANDA, CELESTE RENTERIA, PELAYO, GABRIEL, SHUMILO, J. PEREZ, AVILES, SAGARRA, A. MARTINEZ, N. SALAZAR, R. GONZALEZ, D. DE LA CRUZ, J. ANGUIANO, RICHARD PENA, D. ALVARADO, W. ABITIA, G. PINEDA, VELASCO, CHAVIRA, D. CRUZ, CARLIN, M. REAL, C. GONZALEZ, J. HERNANDEZ, O. LOPEZ, TREJO, R. MARTINEZ, J. BARAJAS, TRUJILLO, MAGANA, PARTIDA, DOMINGA, V. MACIAS, R. MACIAS, N. AGUIRRE, V. ARELLANO, ARACELI ALBARRAN, B. REAL, ALQUICIRA, and JUAN PEDRO RODRIGUEZ, and others, being persons employed by and associated with the Avenues criminal enterprise, which enterprise engaged in and the activities of which affected interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate

18

Title 18, United States Code, Section 1962, that is, to conduct
and participate, directly and indirectly, in the conduct of the
affairs of the enterprise through a pattern of racketeering
activity, as that term is defined in Title 18, United States
Code, Sections 1961(1) and 1961(5), consisting of multiple acts
involving murder, in violation of California Penal Code Sections
31, 182, 187, 189, 217.1, and 664; extortion, in violation of
California Penal Code Sections 518, 519, and 520; robbery, in
violation of California Penal Code Sections 211, 212.5(a), and
213; conspiracy to distribute and distribution of controlled
substances, including crack cocaine, cocaine, heroin, and
methamphetamine, in violation of Title 21, United States Code,
Sections 841(a)(1) and 846; witness tampering, in violation of
Title 18, United States Code, Section 1512; and multiple acts
indictable under Title 18, United States Code, Sections 1956 and
1957 (money laundering).   It was a further part of the conspiracy
that each defendant agreed that a conspirator would commit at
least two acts of racketeering in the conduct of the affairs of
the enterprise.

A.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
      ACCOMPLISHED

      The object of the conspiracy was to be accomplished in
substance as follows:

      1.    Mexican Mafia leaders and associates, including
defendants RUDY AGUIRRE, JR., RICHIE AGUIRRE, RUDY AGUIRRE, SR.,
and P. CORDERO, and others, would meet with Avenues gang leaders
and direct the activities of the Avenues gang, including
activities involving distribution of narcotics and the collection

1   and distribution of "taxed" drug proceeds, and would authorize

2   and direct acts of violence, including the killing of law

3   enforcement officers, from within the California State Prison

4   system and especially the state prison facilities at Corcoran,

5   Delano, and Pelican Bay, California.

6       2.    Mexican Mafia leaders and associates, including

7   defendants RUDY AGUIRRE, JR., RICHIE AGUIRRE, and others, would

8   grant leadership authority within the Avenues gang to defendants

9   SOLIS, RODRIGUEZ, VELASQUEZ, G. HERNANDEZ, OLEA, and G. PINA, and

10  others, after the arrests and convictions of Avenues gang leaders

11  Francisco "Pancho" Real and others on federal racketeering and

12  narcotics charges, from within the California State Prison

13  system, and in order to re-establish the authority of the Avenues

14  gang over the neighborhoods controlled by the gang.

15      3.    Mexican Mafia leaders and associates, including

16  defendants RUDY AGUIRRE, JR., and RICHIE AGUIRRE, and others,

17  including defendants SOLIS, RODRIGUEZ, VELASQUEZ, RICKY AGUIRRE,

18  R. SORIANO, and FAJARDO, and others, would arrange with

19  defendants R. DE LA CRUZ, BAILON, MIRANDA, J. BARAJAS, MAGANA,

20  PARTIDA, V. MACIAS, R. MACIAS, and V. ARELLANO, and others, to

21  smuggle narcotics into California State Prison system facilities

22  and direct the distribution of narcotics within the county jail

23  detention facilities and state prison facilities.

24      4.    Defendants SOLIS, RODRIGUEZ, VELASQUEZ, M. ABITIA,

25  MARRERO, OLEA, RECINOS, PELAYO, and N. SALAZAR, and others, would

26  direct other Avenues gang members to conduct robberies, murders,

27  extortion, witness intimidation, and drug trafficking in order to

28  promote and further the activities of the Avenues gang.

1   5. Defendants SOLIS, RODRIGUEZ, M. ABITIA, Y. GARCIA, G.

2 PINA, J. HERNANDEZ, R. MARTINEZ, J. BARAJAS, and MAGANA, and

3 other narcotics suppliers would provide narcotics to members and

4 associates of the Avenues gang.

5   6. Defendants RICHIE AGUIRRE, RODRIGUEZ, VELASQUEZ, L.

6 MARTINEZ, I. VALDEZ, R. PEREZ, M. ABITIA, MARRERO, G. PINA, R.

7 GONZALEZ, and G. PINEDA, and others, would obtain firearms for

8 Avenues gang members, so they could be used to enforce the

9 authority of the Avenues gang.

10   7. Defendants RICHIE AGUIRRE, SOLIS, RODRIGUEZ, VELASQUEZ,

11 G. HERNANDEZ, R. SALAZAR, R. DE LA CRUZ, SALINAS, VEGA, C.

12 RENTERIA, RICKY AGUIRRE, UPSHAW, RICHARD AGUIRRE, L. MARTINEZ, R.

13 SORIANO, C. CRUZ, R. PEREZ, M. ABITIA, BARCENA, ERENTREICH,

14 FAJARDO, C. CORDERO, E. PEREZ, BAILON, MARRERO, REYES, V.

15 HERNANDEZ, PINTO, J. SILLAS, Y. GARCIA, OLEA, G. PINA, J. PINA,

16 R. PINA, MORA, G. RAMOS, Y. BARAJAS, RECINOS, D. MANCIA, B.

17 NUNEZ, MIRANDA, PELAYO, SHUMILO, AVILES, SAGARRA, A. MARTINEZ, N.

18 SALAZAR, R. GONZALEZ, D. DE LA CRUZ, J. ANGUIANO, RICHARD PENA,

19 D. ALVARADO, W. ABITIA, G. PINEDA, M. REAL, C. GONZALEZ, J.

20 HERNANDEZ, O. LOPEZ, TREJO, R. MARTINEZ, J. BARAJAS, TRUJILLO,

21 MAGANA, PARTIDA, DOMINGA, V. MACIAS, R. MACIAS, N. AGUIRRE, V.

22 ARELLANO, ARACELI ALBARRAN, B. REAL, ALQUICIRA, and JUAN PEDRO

23 RODRIGUEZ, and others, would distribute narcotics in prison and

24 in the neighborhoods controlled by the Avenues gang.

25   8. Defendants SOLIS, RODRIGUEZ, VELASQUEZ, SALINAS, VEGA,

26 UPSHAW, L. MARTINEZ, OLEA, G. PINEDA, and M. REAL, and others,

27 would extort "tax" payments from narcotics traffickers in the

28 area controlled by the Avenues gang and deliver payment to

1  defendants RUDY AGUIRRE, JR., and N. AGUIRRE, and others, to

2  account for the "taxes" owed by the Avenues gang to the Mexican

3  Mafia.

4      9.    Defendants RUDY AGUIRRE, JR., RODRIGUEZ, VELASQUEZ, G.

5  HERNANDEZ, ALBARRAN, R. DE LA CRUZ, SALINAS, VEGA, C. RENTERIA,

6  RICKY AGUIRRE, UPSHAW, C. CRUZ, I. VALDEZ, M. ABITIA, BAILON, J.

7  SILLAS, OLEA, G. PINA, J. PINA, R. PINA, G. RAMOS, RECINOS,

8  GABRIEL, D. ALVARADO, W. ABITIA, VELASCO, CHAVIRA, D. CRUZ,

9  CARLIN, and J. BARAJAS, and others, would use firearms and

10 dangerous weapons to commit robberies, kidnapings, and to

11 retaliate against, attempt to kill, and kill rival gang members,

12 law enforcement officers, potential witnesses to criminal

13 activities committed by Avenues gang members, and residents in

14 the neighborhood controlled by the Avenues gang, in order to

15 enforce the authority of the Avenues gang.

16     10.    Defendants J. SILLAS and RECINOS, and others would

17 threaten victims and potential witnesses of crimes committed by

18 Avenues gang members in order to prevent them from testifying or

19 cooperating with law enforcement about the crimes of the gang.

20     11.    Defendants ARMSTRONG, CELESTE RENTERIA, J. PEREZ, V.

21 ARELLANO, and ARACELI ALBARRAN, and others, would assist Avenues

22 gang members in the commission of violent crimes and narcotics

23 trafficking by providing access to telephones, interfering with

24 law enforcement, helping members to avoid detection by law

25 enforcement, and warning members about the presence of law

26 enforcement.

27     12.    Defendants VELASQUEZ, M. ABITIA, MARRERO, REYES, OLEA,

28 and RECINOS, and others, would recruit new members, including

22

1 | juveniles, and direct their initiation into the Avenues gang.

2 | B.    OVERT ACTS

3 |      In furtherance of the conspiracy, and to accomplish the

4 | objects of the conspiracy, defendants RUDY AGUIRRE, JR., RICHIE

5 | AGUIRRE, RUDY AGUIRRE, SR., SOLIS, RODRIGUEZ, VELASQUEZ, G.

6 | HERNANDEZ, ALBARRAN, R. SALAZAR, R. DE LA CRUZ, SALINAS, VEGA, C.

7 | RENTERIA, RICKY AGUIRRE, UPSHAW, P. CORDERO, RICHARD AGUIRRE, L.

8 | MARTINEZ, R. SORIANO, C. CRUZ, I. VALDEZ, R. PEREZ, M. ABITIA,

9 | BARCENA, ERENTREICH, FAJARDO, C. CORDERO, E. PEREZ, BAILON,

10 | MARRERO, REYES, V. HERNANDEZ, PINTO, J. SILLAS, Y. GARCIA, OLEA,

11 | G. PINA, J. PINA, R. PINA, MORA, G. RAMOS, Y. BARAJAS, RECINOS,

12 | ARMSTRONG, D. MANCIA, B. NUNEZ, MIRANDA, CELESTE RENTERIA,

13 | PELAYO, GABRIEL, SHUMILO, J. PEREZ, AVILES, SAGARRA, A. MARTINEZ,

14 | N. SALAZAR, R. GONZALEZ, D. DE LA CRUZ, J. ANGUIANO, RICHARD

15 | PENA, D. ALVARADO, W. ABITIA, G. PINEDA, VELASCO, CHAVIRA, D.

16 | CRUZ, CARLIN, M. REAL, C. GONZALEZ, J. HERNANDEZ, O. LOPEZ,

17 | TREJO, R. MARTINEZ, J. BARAJAS, TRUJILLO, MAGANA, PARTIDA,

18 | DOMINGA, V. MACIAS, R. MACIAS, N. AGUIRRE, V. ARELLANO, ARACELI

19 | ALBARRAN, B. REAL, ALQUICIRA, and JUAN PEDRO RODRIGUEZ, and

20 | others known and unknown to the Grand Jury committed various

21 | overt acts, on or about the following times and dates, within the

22 | Central District of California and elsewhere, including but not

23 | limited to the following:

24 |     1.   On October 12, 1989, defendant R. DE LA CRUZ identified

25 | himself as an Avenues gang member and told law enforcement

26 | officers that he was in the neighborhood to support another

27 | Avenues gang member.

28 |     2.   On May 1, 1999, defendant RECINOS and other gang

1  members threw beer cans and threatened law enforcement officers

2  on Drew Street in a neighborhood controlled by the Avenues gang.

3      3.    On July 8, 1999, defendant MARRERO possessed gang

4  paraphernalia, approximately .39 grams of cocaine and plastic

5  baggies at his residence on Andrita Street in the neighborhood

6  controlled by the Avenues gang.

7      4.    On July 12, 1999, defendant ALVARADO possessed a loaded

8  .22 caliber handgun in the neighborhood controlled by the Avenues

9  gang.

10     5.    On July 22, 1999, defendant G. RAMOS possessed a 9 mm

11 handgun, which had an obliterated serial number, and 29 rounds of

12 ammunition on Avenue 32 in the neighborhood controlled by the

13 Avenues gang.

14     6.    On September 5, 2000, defendant VEGA and other

15 unidentified Avenues gang members aimed a gun at D.W., an

16 African-American male, and threatened him, saying, "this is

17 Avenues gang, what's up, n****r?"

18     7.    On March 15, 2001, defendants VEGA and I. VALDEZ

19 possessed an Intratec .22 caliber semi-automatic handgun and 19

20 rounds of ammunition in the neighborhood controlled by the

21 Avenues gang.

22     8.    On May 11, 2001, defendant VEGA "tagged" a wall on

23 Avenue 56 and York Boulevard in Los Angeles, California, with his

24 gang name "Fox" and the identification of "Aves," to claim the

25 neighborhood as being controlled by the Avenues gang.

26     9.    On July 31, 2001, defendant G. PINA fled from law

27 enforcement officers into a store on Fletcher Avenue in Los

28 Angeles, California, with a loaded gun.

10. On July 6, 2002, defendant G. RAMOS possessed a loaded .357 revolver on Avenue 26, in Los Angeles, California.

11. On August 8, 2002, defendant B. NUNEZ and an unindicted co-conspirator burglarized a car on Chapman Avenue in the neighborhood controlled by the Avenues gang.

12. On December 10, 2002, defendant G. PINA possessed a loaded .380 caliber handgun on Drew Street in the neighborhood controlled by the Avenues gang.

13. On December 18, 2002, defendant L. MARTINEZ possessed approximately 2.48 grams of crack cocaine on Drew Street in the neighborhood controlled by the Avenues gang.

14. On December 27, 2002, defendant R. SORIANO maintained inside a Jeep Cherokee a backpack containing marijuana for distribution in Los Angeles, California.

15. On January 27, 2003, defendant CELESTE RENTERIA threatened L.M. and warned L.M. that she would need to "watch her back."

16. On April 2, 2003, defendant RICHARD AGUIRRE possessed approximately 12 grams of crack cocaine, .21 grams of methamphetamine, 29 grams of marijuana, and $4,000 in United States currency at a residence on Pollard Street in Los Angeles, California.

17. On April 7, 2003, defendant R. SORIANO possessed approximately .61 grams of methamphetamine inside a 1981 Buick in Los Angeles, California.

18. On August 13, 2003, defendant J. PEREZ interfered with LAPD Officers Castro and Langarica, who were attempting to arrest an Avenues gang member, and J. PEREZ seized Officer Castro's

police radio and threw it in order to prevent Officers Castro and Langarica from arresting Avenues gang member Rigoberto Perez in the neighborhood controlled by the Avenues gang.

19. On November 9, 2003, Mexican Mafia Member #1 and another Mexican Mafia leader ordered the murder of C.C. by C.G., aka "Chopper," H.H., and another unindicted co-conspirator.

20. On November 28, 2003, defendant G. PINEDA possessed a loaded .45 caliber handgun on Isabel Drive, in Los Angeles, California, as he ran from law enforcement officers.

21. On January 5, 2004, defendant Y. GARCIA possessed methamphetamine for distribution on Verdugo Road in Los Angeles, California.

22. On February 28, 2004, Mexican Mafia Member #1 ordered defendants RUDY AGUIRRE, JR., and VEGA, C.G., aka "Chopper," and others to kill A.S., because A.S. and his "Night Owls" clique had been "green-lighted" by the Mexican Mafia leaders.

23. On March 3, 2004, defendants VELASQUEZ and G. PINA, and others, possessed approximately 3.14 grams of crack cocaine and approximately $3,364 in United States currency at an Avenues hangout located on Drew Street in Los Angeles, California.

24. On September 15, 2004, defendant G. RAMOS possessed a loaded .22 caliber revolver on Division Street in a neighborhood controlled by the Avenues gang.

25. On September 22, 2004, defendant E. PEREZ possessed a Colt .357 revolver, loaded with six rounds of hollow-point ammunition, on Lincoln Avenue, in Los Angeles, California.

26. On October 22, 2004, defendant MORA possessed a loaded .32 caliber revolver as he fled from officers in the neighborhood

1  controlled by the Avenues gang.

2      27.  On November 5, 2004, defendant V. HERNANDEZ attempted

3  to "tag" a wall on Chapman Street in Los Angeles, California, in

4  order to demonstrate the control of the Avenues gang in the

5  neighborhood.

6      28.  On November 30, 2004, defendant SAGARRA possessed a

7  loaded 9 mm handgun on Baltimore Street, in Los Angeles,

8  California.

9      29.  On January 6, 2005, defendant L. MARTINEZ possessed

10  crack cocaine in nine "ziploc" baggies in his vehicle in the

11  neighborhood controlled by the Avenues gang.

12      30.  On January 22, 2005, Mexican Mafia Member #1 ordered

13  C.G. and others to kill E.R. for having defied Mexican Mafia

14  leadership incarcerated at Pelican Bay State Prison.

15      31.  On March 8, 2005, defendant BAILON and other Avenues

16  gang members entered a residence, attacked F.S., and stabbed

17  K.D., while shouting racial epithets and ordering them to move

18  out of the neighborhood controlled by the Avenues gang.

19      32.  On April 7, 2005, defendant L. MARTINEZ possessed a

20  handgun and nine rounds of ammunition on Drew Street in the

21  neighborhood controlled by the Avenues gang.

22      33.  On April 14, 2005, defendant L. MARTINEZ possessed a

23  .380 caliber handgun and seven rounds of ammunition on Drew

24  Street in the neighborhood controlled by the Avenues gang.

25      34.  On April 16, 2005, defendant R. SALAZAR and two other

26  Avenues gang members attacked and beat E.B. in Los Angeles,

27  California, while shouting "Avenues."

28      35.  On May 25, 2005, defendant R. PINA possessed

27

methamphetamine in the neighborhood controlled by the Avenues gang.

36.  On June 3, 2005, defendant Y. GARCIA possessed PCP and .13 grams of methamphetamine in a residence located on Weldon Avenue in the neighborhood controlled by the Avenues gang.

37.  On September 9, 2005, defendant Y. GARCIA possessed PCP and a glass vial in the neighborhood controlled by the Avenues gang.

38.  On October 11, 2005, defendant MORA possessed a .38 caliber revolver while accompanied by defendant G. HERNANDEZ on San Fernando Road in the neighborhood controlled by the Avenues gang.

39.  On November 29, 2005, Luis Leon and Alex Valencia watched for law enforcement, while defendant AVILES attempted to "tag" a sidewalk on the corner of Crestmore Place and Verdugo Road and possessed a loaded .380 caliber handgun.

40.  On December 2, 2005, defendant BARCENA possessed a loaded .38 caliber revolver in the neighborhood controlled by the Avenues gang.

41.  On December 13, 2005, defendant J. PINA and William Real possessed approximately .40 grams of methamphetamine in the neighborhood controlled by the Avenues gang.

42.  On January 17, 2006, a juvenile Avenues gang member threatened R.G. and shot her in the face with a BB gun.

43.  On February 15, 2006, defendant VELASQUEZ possessed crack cocaine, and defendant J. PINA attacked law enforcement officers when they attempted to arrest VELASQUEZ on Branden Street, in Los Angeles, California.

28

44. On February 18, 2006, defendant G. PINEDA possessed a loaded 9 mm handgun in a car, as he fled from law enforcement officers.

45. On February 21, 2006, defendant E. PEREZ possessed a .44 magnum revolver and ammunition in a residence on Museum Drive in Los Angeles, California.

46. On May 3, 2006, defendant BARCENA possessed a loaded Colt 10 mm caliber handgun on Avenue 59 in the neighborhood controlled by the Avenues gang.

47. On May 6, 2006, defendant J. PINA possessed a .380 caliber handgun at his residence on Avenue 34 in the neighborhood controlled by the Avenues gang.

48. On July 7, 2006, defendants G. RAMOS and I. VALDEZ possessed a loaded 9 mm handgun at an Avenues gang "hangout" on Avenue 59, in Los Angeles, California.

49. On September 1, 2006, defendant I. VALDEZ possessed a loaded .45 caliber revolver on Avenue 59 in the neighborhood controlled by the Avenues gang.

50. On September 19, 2006, defendant C. RENTERIA possessed approximately 4.5 grams of cocaine and 2.6 grams of methamphetamine in Los Angeles, California.

51. On October 8, 2006, Mexican Mafia Member #1 ordered defendants C. RENTERIA and A. MARTINEZ, and others, to kill F.C. for defying Mexican Mafia leaders.

52. On December 1, 2006, defendant R. SALAZAR possessed crack cocaine, as well as a scale and approximately $8,500 in United States currency at the residence located at 3117 Estara Avenue, in Los Angeles, California.

53.   January 12, 2007, juvenile Avenues gang members armed themselves and threatened to shoot persons passing through or near the neighborhood controlled by the Avenues gang.

54.   On February 10, 2007, defendant Y. BARAJAS possessed a loaded 9 mm handgun on Avenue 53 in the neighborhood controlled by the Avenues gang.

55.   On April 5, 2007, defendant D. MANCIA sold crack cocaine on Drew Street in the neighborhood controlled by the Avenues gang.

56.   On May 15, 2007, Avenues gang members confronted L.P. near the intersection of York and Avenue 57, demanded to know L.P.'s gang affiliation, and shot him nine times when he identified himself as a Highland Park gang member.

57.   On May 23, 2007, a juvenile Avenues gang member possessed crack cocaine in a residence on Drew Street, in Los Angeles, California, and defendant CELESTE RENTERIA assaulted law enforcement officers when they arrested the juvenile gang member.

58.   On June 22, 2007, near Avenue 26, in Los Angeles, California, defendant SALINAS and other Avenues gang members shot M.L.

59.   On June 30, 2007, defendants C. RENTERIA, C. CRUZ, and D. CRUZ, and others, shot L.O. and R.J. on San Fernando Road, in Los Angeles, California.

60.   On July 16, 2007, defendant G. PINEDA possessed a loaded .380 handgun, approximately three grams of cocaine, "pay and owe" sheets, and $300 in United States currency at his residence on Wollam Street, in Los Angeles, California.

61.   On August 4, 2007, defendant R. PINA possessed

approximately .13 grams of methamphetamine and a loaded 9 mm
handgun in a car, while in the neighborhood controlled by the
Avenues gang.

62.  On August 8, 2007, defendant B. NUNEZ possessed
approximately .51 grams of crack cocaine.

63.  On August 11, 2007, defendant P. CORDERO used a "kite"
in prison to advise another inmate of P. CORDERO's status within
the Mexican Mafia as a result of his relationship with Mexican
Mafia Member #1 and Alex "Pee Wee" Aguirre, and specifically to
inform the inmate that P. CORDERO was authorized to make
decisions in the institution regarding the smuggling and
distribution of narcotics and the distribution of illegal
proceeds inside Pelican Bay State Prison on behalf of the Mexican
Mafia.

64.  On August 26, 2007, by telephone using coded language,
Jose Leon advised Jesus Martinez, Jr., that the Mexican Mafia had
authorized the formation of the Drew Street clique of the Avenues
gang with defendants R. DE LA CRUZ and C. RENTERIA, and others.

65.  On September 2, 2007, by telephone using coded
language, defendant C. RENTERIA discussed retaliating against
rival gang members with Jose Leon and an unidentified co-
conspirator and made arrangements for co-conspirators to take
possession of C. RENTERIA's .357 magnum handgun while C. RENTERIA
was incarcerated, and Jose Leon said that he was holding items
for C. RENTERIA.

66.  On September 2, 2007, by telephone using coded
language, defendant C. RENTERIA told Jose Leon that C. RENTERIA
wanted Francisco Real to keep C. RENTERIA's .357 Magnum handgun

31

1  for him after C. RENTERIA's arrest, and Jose Leon told C.

2  RENTERIA that Jose Leon would hold his supply of illegal drugs

3  for C. RENTERIA because C. RENTERIA believed that he would be

4  released from custody soon.

5      67.  On September 2, 2007, by telephone using coded

6  language, defendant R. PINA told Francisco Real that a female had

7  provided information to law enforcement to support a criminal

8  charge against him, and asked if Real would provide R. PINA with

9  narcotics to sell when R. PINA was released from prison the

10 following year.

11     68.  On September 24, 2007, by telephone while in jail and

12 using coded language, defendant G. PINEDA and a co-conspirator

13 discussed directing Avenues gang member J.R. to collect "taxes"

14 and run the Drew Street neighborhood, and G. PINEDA told the co-

15 conspirator that G. PINEDA believed he had been arrested because

16 a third person had identified him to law enforcement.

17     69.  On October 2, 2007, defendant C. RENTERIA attempted to

18 "tag" locations near Avenue 34 and on Estara Street for the

19 Avenues gang and the Drew Street clique of the Avenues gang.

20     70.  On October 13, 2007, defendant ALBARRAN "threw" gang

21 signs and attacked A.C.V. with a beer bottle at a nightclub, in

22 Cudahy, California.

23     71.  On October 18, 2007, defendant R. DE LA CRUZ possessed

24 approximately 3.26 grams of crack cocaine, a skull belt to

25 identify membership in the Avenues gang, and "pay-and-owe" sheets

26 in the area controlled by the Avenues gang.

27     72.  On October 19, 2007, defendant RICHARD PENA possessed a

28 loaded, 12-gauge short-barrel shotgun, concealed under his

jacket, on Figueroa Street in the area controlled by the Avenues gang.

73. On October 20, 2007, by telephone while in jail and using coded language, defendant G. PINEDA directed an Avenues gang member to sell a gun to Francisco "Pancho" Real for an amount of money that would earn him $100 in profit and directed the Avenues gang member to collect $100 in "taxes" from defendant G. HERNANDEZ that day, and G. PINEDA also advised the gang member to go into the neighborhood with other Mexican Mafia and Avenues gang leaders in order to familiarize himself with the narcotics traffickers so that he could take control of the neighborhood from them.

74. On October 25, 2007, a juvenile Avenues gang member and Jorge Lara possessed an AK-47 assault rifle, a .357 magnum handgun, and ammunition at a residence on Drew Street in the neighborhood controlled by the Avenues gang.

75. On October 31, 2007, by telephone using coded language, defendant C. CRUZ told defendant C. RENTERIA that C. CRUZ was doing well selling narcotics, but that "paisas" had been resisting paying "taxes," and C. RENTERIA told C. CRUZ that Raul Borja possessed C. RENTERIA's Tech-9 firearm if C. CRUZ wanted to use it against the "paisas."

76. On November 24, 2007, defendant Y. BARAJAS possessed approximately 3.07 grams of crack cocaine on Drew Street in the neighborhood controlled by the Avenues gang.

77. On December 2, 2007, defendant C. RENTERIA possessed approximately 2.17 grams of crack cocaine on Drew Street in the neighborhood controlled by the Avenues gang.

78.  On January 3, 2008, defendants RUDY AGUIRRE, JR., SALINAS, and VEGA, and others, met at a McDonald's restaurant in Glendale, California, in order to plan to kill H.H., and SALINAS and VEGA later used a Glock 9 mm handgun to shoot H.H.

79.  On January 26, 2008, defendant SALINAS possessed a .22 caliber handgun in the neighborhood controlled by the Avenues gang.

80.  On January 30, 2008, defendant SALINAS possessed rounds of .22 caliber, .32 caliber, and .38 caliber ammunition, along with a digital scale, a glass pipe, and packaging materials used for the distribution of methamphetamine in a residence in Sun Valley, California.

81.  On February 5, 2008, by telephone using coded language, defendant MORA and Francisco Real discussed plans to "jump" an Avenues gang member into a different clique of the gang.

82.  On February 6, 2008, by telephone using coded language, Francisco Real asked defendant C. CRUZ to identify his location and directed C. CRUZ to hide narcotics.

83.  On February 10, 2008, by telephone using coded language, defendant C. CRUZ advised Francisco Real that CRUZ was delivering narcotics for Francisco Real.

84.  On February 17, 2008, defendant R. PINA attempted to discard approximately .24 grams of methamphetamine from a car in order to prevent the methamphetamine from being discovered by law enforcement.

85.  On February 20, 2008, by telephone using coded language, defendant Y. GARCIA arranged to obtain crack cocaine from Francisco Real.

86. On March 2, 2008, by telephone using coded language, defendant Y. GARCIA arranged to obtain narcotics from Francisco Real on Drew Street, in Los Angeles, California.

87. On March 5, 2008, by telephone using coded language, defendant Y. GARCIA arranged to obtain crack cocaine from Francisco Real.

88. On March 15, 2008, defendants RUDY AGUIRRE, JR., and RUDY AGUIRRE, SR., met with Mexican Mafia Member #1 in the Pelican Bay State Prison, and RUDY AGUIRRE, JR., told Mexican Mafia Member #1 that RUDY AGUIRRE, JR., wanted permission to retaliate against an individual identified as "Boo Boo," because "Boo Boo" had not assisted an Avenues gang member who had been fatally injured during a shooting with a rival gang member and had not shown sufficient respect for the Aguirre family, and Mexican Mafia Member #1 directed RUDY AGUIRRE, JR., to advise others that the authorization to punish "Boo Boo" with a physical beating had come from Mexican Mafia Member #1.

89. On March 15, 2008, during the same visit to Pelican Bay State Prison, Mexican Mafia Member #1 asked defendant RUDY AGUIRRE, JR., about the status of Avenues gang leaders and Mexican Mafia representatives who were out of prison, specifically Neo Perez and James Campbell.

90. On March 16, 2008, defendant RUDY AGUIRRE, SR., met with Mexican Mafia Member #1 at Pelican Bay State Prison, and Mexican Mafia Member #1 advised that RUDY AGUIRRE, JR., should not move to Orange County because he would be in the territory of another gang, and Mexican Mafia Member #1 provided direction to RUDY AGUIRRE, SR., about the management of the Avenues gang and

the role of RUDY AGUIRRE, JR., in the gang, stressing that RUDY
AGUIRRE, JR., should try to avoid attracting the attention of law
enforcement.

91.   On April 3, 2008, by telephone using coded language,
defendant D. MANCIA told Francisco Real that a co-conspirator
would be meeting with Francisco Real.

92.   On April 17, 2008, by telephone using coded language,
defendant D. MANCIA asked Francisco Real if Francisco Real had
taken possession of a gun that Francisco Real had previously
given to D. MANCIA's brother, and Francisco Real said that the
gun he had provided to D. MANCIA's brother was "clean" because it
had previously been possessed by Francisco Real's brother, D.L.,
aka "Clever."

93.   On April 20, 2008, by telephone using coded language,
Francisco Real told a co-conspirator that he had recently
provided narcotics to defendant B. NUNEZ.

94.   On April 25, 2008, by telephone using coded language,
Francisco Real and a co-conspirator discussed arrangements to
have a third person deliver crack cocaine to defendant B. NUNEZ.

95.   On April 25, 2008, by telephone using coded language,
defendant D. MANCIA and Francisco Real discussed arrangements to
obtain crack cocaine from a source of supply.

96.   On May 3, 2008, by telephone using coded language,
defendant RECINOS told Francisco Real that defendant V. HERNANDEZ
was supposed to sell narcotics for RECINOS.

97.   On May 4, 2008, by telephone using coded language,
defendant D. MANCIA arranged to obtain narcotics from Francisco
Real, and Francisco Real told D. MANCIA that Francisco Real's

1  narcotics supplier was en route to deliver narcotics to him.

2      98.  On May 15, 2008, by telephone using coded language,

3  Francisco Real directed a co-conspirator to claim falsely that he

4  had been threatened by a law enforcement officer as the basis for

5  a complaint against the officer.

6      99.  On May 16, 2008, by telephone using coded language,

7  Rafael Carrillo told defendant N. SALAZAR that Rafael Carrillo

8  had been charged in the February 21, 2008 murder of M.S. and

9  attempted murder of LAPD Officer Langarica and that Jose Gomez

10  had implicated him in these crimes to law enforcement.

11      100.  On May 17, 2008, by telephone using coded language,

12  defendant RUDY AGUIRRE, JR., told defendant RODRIGUEZ that

13  RODRIGUEZ could continue to work for RUDY AGUIRRE, JR., by

14  collecting "taxes" when RODRIGUEZ was released from county jail,

15  if he was not restricted to a supervised "half-way" house, and

16  RODRIGUEZ told RUDY AGUIRRE, JR., that he would fight being sent

17  to a "half-way" house by claiming that he had a legitimate job

18  and that he would obtain a letter of support from the director

19  for "Homeboy Industries" in order to convince the court that he

20  was reforming his life, and RODRIGUEZ would then be able to

21  resume collecting "taxes" and narcotics proceeds for RUDY

22  AGUIRRE, JR., and the Mexican Mafia.

23      101.  On May 17, 2008, by telephone using coded language,

24  defendant RODRIGUEZ told defendant RUDY AGUIRRE, JR., that a co-

25  conspirator, referred to as "Bam-Bam," had been arrested with

26  narcotics at his residence, and that James Campbell needed a

27  telephone number from RUDY AGUIRRE, JR., and RUDY AGUIRRE, JR.,

28  told RODRIGUEZ that James Campbell was concerned about

37

1  retaliation from Mexican Mafia leaders in the Pelican Bay State

2  Prison if James Campbell were incarcerated again.

3      102.  On May 19, 2008, by telephone using coded language,

4  defendant R. SALAZAR told Francisco Real that he had been pursued

5  by law enforcement, and that he and Francisco Real needed to make

6  contact with a drug-trafficker who had not been paying "taxes"

7  for distributing narcotics in the area controlled by the Avenues

8  gang.

9      103.  On May 24, 2008, by telephone using coded language,

10  defendant D. MANCIA arranged to obtain narcotics from Francisco

11  Real for distribution in the area controlled by the Avenues gang.

12      104.  On May 26, 2008, by telephone using coded language,

13  defendant MORA arranged to obtain narcotics from Francisco Real

14  for distribution in the area controlled by the Avenues gang.

15      105.  On May 27, 2008, by telephone using coded language,

16  defendant D. MANCIA told Francisco Real that law enforcement

17  officers had arrested an Avenues gang member and caught him with

18  "rocks" of crack cocaine.

19      106.  On May 27, 2008, law enforcement officers seized

20  approximately 19 grams of crack cocaine and two grams of

21  methamphetamine from the residence of an Avenues gang member on

22  Drew Street, in Los Angeles, California.

23      107.  On May 27, 2008, by telephone using coded language,

24  Francisco Real told a co-conspirator to file a false complaint

25  against law enforcement officers in response to the seizure of

26  crack cocaine from an Avenues gang member.

27      108.  On May 30, 2008, by telephone using coded language,

28  defendant RODRIGUEZ spoke to defendant RUDY AGUIRRE, JR., and a

1    co-conspirator and obtained authorization from them to stab a

2    rival gang member inside the Los Angeles County Detention

3    Facility in Los Angeles, California.

4        109.  On May 30, 2008, by telephone using coded language,

5    defendant RUDY AGUIRRE, JR., told defendant RODRIGUEZ that RUDY

6    AGUIRRE, JR., knew a co-conspirator had given RODRIGUEZ

7    authorization to stab a rival gang member because RUDY AGUIRRE,

8    JR., had participated in the telephone conversation when the

9    authorization was discussed, and RODRIGUEZ said that he had been

10   discussing orders from the Mexican Mafia with other inmates and

11   the "green-light" status of gangs.

12       110.  On June 17, 2008, by telephone using coded language, a

13   juvenile Avenues gang member told defendant C. RENTERIA that the

14   juvenile gang member had recently been released from jail and

15   discussed his contacts with other Avenues gang members and rival

16   gangs since he had been released, as well as firearms and

17   ammunition he had obtained from Avenues gang members, and C.

18   RENTERIA told the juvenile gang member that an Avenues gang

19   member had been "green-lighted" by the Mexican Mafia because he

20   had provided information to law enforcement about an incident in

21   which members had killed a rival gang member and attempted to

22   kill law enforcement officers.

23       111.  On June 20, 2008, J. ANGUIANO identified himself as an

24   Avenues gang member and attacked A.C., and then used a .45

25   caliber handgun to attack J.C. in the area controlled by the

26   Avenues gang.

27       112.  On July 4, 2008, by telephone using coded language,

28   James Campbell told defendant RUDY AGUIRRE, JR., that RUDY

39

1  AGUIRRE, JR., had not been named in a recent federal indictment,

2  asked if defendant RODRIGUEZ was continuing to carry out

3  transactions on behalf of the organization despite the

4  indictment, and told RUDY AGUIRRE, JR., that James Campbell

5  maintained a computer chip at his residence that had data

6  concerning co-conspirators and associates of the organization,

7  and RUDY AGUIRRE, JR., answered that he would direct his

8  girlfriend to retrieve the chip and that he intended to avoid

9  attention for a period of time until he felt certain that he had

10  not been implicated in the recent indictment and arrests of

11  Avenues gang members.

12      113.  On August 2, 2008, a juvenile Avenues gang member

13  provided Avenues gang members with a Glock .40 caliber handgun.

14      114.  On August 2, 2008, defendants VELASQUEZ, G. HERNANDEZ,

15  ALBARRAN, R. DE LA CRUZ, and R. SALAZAR shot Los Angeles

16  Sheriff's Deputy Juan Escalante to death with a .40 caliber

17  handgun in the area controlled by the Avenues gang.

18      115.  On August 2, 2008, two juvenile Avenues gang members

19  took and disposed of the firearm that had been used by Avenues

20  gang members to kill Deputy Escalante.

21      116.  On August 2, 2008, by telephone using coded language,

22  defendant MIRANDA told defendant R. SORIANO that defendant

23  RODRIGUEZ had been collecting "taxes" for the Mexican Mafia, and

24  R. SORIANO told MIRANDA that RODRIGUEZ knew who had killed Deputy

25  Escalante, but did not want to tell R. SORIANO over the

26  telephone, so R. SORIANO directed MIRANDA to obtain the

27  information from RODRIGUEZ and stated that he needed to find out

28  if the murder had been ordered by the Mexican Mafia.

117. On August 3, 2008, by telephone using coded language, an unidentified co-conspirator told defendant FAJARDO that the co-conspirator would smuggle narcotics into the jail facility for them when he surrendered to law enforcement and was taken into custody.

118. On August 7, 2008, by telephone using coded language, defendant R. SORIANO directed defendant MIRANDA to connect him by a "three-way" call to defendant RODRIGUEZ, and R. SORIANO told RODRIGUEZ that Avenues gang member Jose Leon was directing the activities of the Drew Street clique of the Avenues gang from inside the Los Angeles County Jail, and that R. SORIANO wanted more information about the murder of Deputy Escalante.

119. On August 10, 2008, by telephone using coded language, an unindicted co-conspirator told defendant R. SORIANO that he would bring an "8-ball" and 3 grams of methamphetamine into the Los Angeles County Jail.

120. On August 11, 2008, by telephone using coded language, defendant R. SORIANO asked defendant PINTO if PINTO had narcotics to deliver to an unindicted co-conspirator, and R. SORIANO then directed the unindicted co-conspirator to deliver the narcotics to him.

121. On August 11, 2008, by telephone using coded language, an unindicted co-conspirator told defendant FAJARDO that the unindicted co-conspirator would direct a juvenile gang member to retrieve narcotics from him, and defendant PINTO later told FAJARDO that narcotics and money had been delivered inside a blue glove and a white glove.

122. On August 11, 2008, by telephone using coded language,

41

1    defendant R. SORIANO asked defendant PINTO to provide him with

2    the numbers for new, disposable telephones to be used by

3    narcotics traffickers, and PINTO provided the telephone numbers

4    and told R. SORIANO that the numbers should be activated by the

5    following Thursday.

6        123.  On August 12, 2008, by telephone using coded language,

7    defendant R. SORIANO directed defendant MIRANDA to change the

8    telephone numbers for certain cellular telephones so that co-

9    conspirators could continue to use the telephones to facilitate

10   their criminal activities, and R. SORIANO provided MIRANDA with

11   personal information for three persons for her to use to open new

12   accounts for cellular telephones.

13       124.  On August 13, 2008, defendant PELAYO and a co-

14   conspirator beat and robbed M.G. and M.R. in the area controlled

15   by the Avenues gang.

16       125.  On August 13, 2008, by telephone using coded language,

17   an unindicted co-conspirator attempted to smuggle approximately

18   28 grams of heroin into the Los Angeles County Jail at the

19   direction of defendants R. SORIANO and FAJARDO.

20       126.  On August 15, 2008, by telephone using coded language,

21   defendant VELASQUEZ and Avenues gang member Jose Leon, aka

22   "Nene," discussed law enforcement efforts to investigate the

23   murder of Deputy Escalante by Avenues gang members, and Jose Leon

24   told VELASQUEZ that Mexican Mafia leaders had ordered that the

25   Cypress and 43rd Street cliques of the Avenues gang should be

26   more active following the recent arrests and charges against

27   members of the Drew Street clique.

28       127.  On August 15, 2008, by telephone using coded language,

1  defendant VELASQUEZ told Avenues gang member Jose Leon that he

2  had killed Deputy Escalante in retribution for the shooting death

3  of Avenues gang member D.L., aka "Clever," during a confrontation

4  with LAPD officers on February 21, 2008, stating specifically

5  that "Clever took one with him," and Jose Leon told VELASQUEZ

6  that he would protect VELASQUEZ' brother and Avenues gang member

7  Jose Gomez from retaliation for cooperating with law enforcement,

8  because VELASQUEZ had killed Deputy Escalante.

9      128.  On August 16, 2008, defendant MIRANDA arranged for

10  defendant R. SORIANO to communicate by three-way telephone

11  conversation with defendant RODRIGUEZ, and, using coded language,

12  R. SORIANO told RODRIGUEZ that R. SORIANO believed he was about

13  to be attacked by rival gang members because an unindicted co-

14  conspirator had been caught attempting to smuggle heroin and

15  marijuana into the Los Angeles County Jail, and R. SORIANO asked

16  RODRIGUEZ to advise defendant RUDY AGUIRRE, JR., of his concern

17  because RUDY AGUIRRE, JR., would have the authority, on behalf of

18  the Mexican Mafia, to direct the conduct of the rival gang

19  members.

20      129.  On August 19, 2008, defendant PELAYO possessed

21  approximately 2.12 grams of methamphetamine, .73 grams of

22  cocaine, and 2.71 grams of marijuana in the neighborhood

23  controlled by the Avenues gang.

24      130.  On September 1, 2008, defendants PELAYO and RICHARD

25  PENA identified themselves as Avenues gang members, robbed A.E.

26  at gunpoint, and stole A.E.'s car in the neighborhood controlled

27  by the Avenues gang.

28      131.  On September 2, 2008, defendant UPSHAW possessed a

loaded Smith and Wesson .357 revolver with a "speed loader" and ammunition in a black Dodge truck on Avenue 50 in the area controlled by the Avenues gang.

132. On September 8, 2008, by telephone using coded language, defendant RUDY AGUIRRE, JR., told James Campbell that defendant RODRIGUEZ could be assigned to collect "taxes" in the area controlled by the Avenues gang following the recent arrests of other Mexican Mafia "tax" collectors.

133. On September 12, 2008, by telephone using coded language, defendant V. MACIAS told an unidentified co-conspirator, identified as "Andy," that V. MACIAS planned to visit another co-conspirator who was incarcerated, and V. MACIAS asked "Andy" if he had been able to obtain narcotics for V. MACIAS to deliver to the co-conspirator inside the prison.

134. On September 12, 2008, by telephone using coded language, defendant RODRIGUEZ sought authorization from defendant RUDY AGUIRRE, JR., to direct defendant BAILON to collect "taxes" and sell narcotics on Drew Street, and RUDY AGUIRRE, JR., said that he would approve, depending on whether BAILON would be responsible to pay the proceeds from the collection of "taxes" to the Aguirre family, as opposed to the Marquez family.

135. On September 12, 2008, by telephone using coded language, defendant RODRIGUEZ told defendant REYES that RODRIGUEZ had been having difficulty selling narcotics and that the narcotics he had obtained from REYES were of a poor quality, and REYES told RODRIGUEZ that RODRIGUEZ should not be concerned about the money he owed REYES.

136. On September 12, 2008, by telephone using coded

44

language, defendant RODRIGUEZ told defendant BAILON that RODRIGUEZ needed to get approval from Mexican Mafia leaders for BAILON's role in the Drew Street neighborhood.

137. On September 13, 2008, by telephone using coded language, defendant RODRIGUEZ arranged to obtain two ounces of methamphetamine from defendant BAILON and discussed the quality of methamphetamine he had previously obtained from defendant REYES.

138. On September 13, 2008, by telephone using coded language, defendant BAILON told defendant RODRIGUEZ that defendant REYES was going to take delivery of the quantity of narcotics that BAILON was providing for distribution in the area controlled by the Avenues gang, and that BAILON would also provide one half pound of marijuana to defendant RODRIGUEZ.

139. On September 13, 2008, by telephone using coded language, defendant BAILON told defendant SALINAS that BAILON had been out of custody for six months, was concerned about the impact on the Avenues gang from the recent arrests of Drew Street members, and had been providing methamphetamine and crack cocaine to members of the "Division" clique of the Avenues gang, and SALINAS asked BAILON to provide SALINAS with a gun.

140. On September 13, 2008, by telephone using coded language, an unindicted co-conspirator arranged to obtain crack cocaine from defendant RODRIGUEZ.

141. On September 13, 2008, by telephone using coded language, defendant BAILON confirmed that he had provided defendant REYES with nearly a pound of marijuana to deliver to defendant RODRIGUEZ.

142.   On September 14, 2008, by telephone using coded language, defendant RODRIGUEZ told an unindicted co-conspirator that RODRIGUEZ would supply him with a scale and that RODRIGUEZ had approximately one ounce of methamphetamine for distribution.

143.   On September 14, 2008, by telephone using coded language, defendant V. MACIAS arranged to obtain narcotics to deliver to a co-conspirator in prison.

144.   On September 14, 2008, by telephone using coded language, defendant RODRIGUEZ confirmed to defendant BAILON that BAILON had provided good quality narcotics to RODRIGUEZ.

145.   On September 16, 2008, by telephone using coded language, defendants RODRIGUEZ and UPSHAW discussed their plans to collect "taxes" from drug traffickers in the area controlled by the Avenues gang.

146.   On September 16, 2008, by telephone using coded language, defendant VELASQUEZ arranged to collect "tax" payments for narcotics sales by an unidentified co-conspirator in the neighborhood controlled by the Avenues gang.

147.   On September 16, 2008, by telephone using coded language, defendant SALINAS identified himself as defendant RODRIGUEZ and told a local drug-trafficker, identified as "Gina," that she would be required to pay a portion of the profits from her methamphetamine sales to the Avenues gang and that the Avenues gang would then protect her from rival gangs or other threats to her drug trafficking, and SALINAS warned that he could "tax" her in any manner he sought fit, including by taking her children's beds, televisions, her clothes or her husband's clothes, for the years that she had been selling methamphetamine

46

in the neighborhood controlled by the Avenues gang.

148. On September 16, 2008, by telephone using coded language, defendant RODRIGUEZ contacted an unidentified co-conspirator and demanded "tax" payment for the co-conspirator's distribution of crack cocaine.

149. On September 16, 2008, by telephone using coded language, defendant SALINAS told a local drug-trafficker and an unindicted co-conspirator, identified as "Silvia," that the drug-trafficker would be required to pay taxes to the Avenues gang for her narcotics distribution in the Drew Street neighborhood and in Duarte, California.

150. On September 16, 2008, by telephone using coded language, defendant RODRIGUEZ told an unindicted co-conspirator that he had demanded "tax" payment from another unidentified co-conspirator, and the unindicted co-conspirator confirmed to RODRIGUEZ that he had been selling crack cocaine in the area controlled by the Avenues gang.

151. On September 17, 2008, by telephone using coded language, defendant RODRIGUEZ directed defendant REYES to collect "taxes" in the area controlled by the Avenues gang, and REYES confirmed that he should deliver the payments to RODRIGUEZ once he had finished "collecting" in the neighborhood.

152. On September 19, 2008, by telephone using coded language, defendant R. MACIAS directed defendant V. MACIAS to obtain narcotics from a co-conspirator, identified as "Andy," to be smuggled into prison.

153. On September 19, 2008, by telephone using coded language, defendant V. MACIAS contacted an unindicted co-

47

1  conspirator, identified as "Andy," and "Andy" told V. MACIAS that
2  he would contact her as soon as he had obtained narcotics.

3      154.  On September 20, 2008, by telephone using coded
4  language, defendant V. MACIAS told defendant R. MACIAS that V.
5  MACIAS was awaiting word from "Andy" about the delivery of
6  narcotics.

7      155.  On September 20, 2008, defendant RUDY AGUIRRE, SR.,
8  met with Mexican Mafia Member #1 at the Pelican Bay State Prison,
9  and RUDY AGUIRRE, SR., told Mexican Mafia Member #1 that "tax"
10 payments had stopped because of the arrests of Drew Street gang
11 members in June 2008, that Drew Street had been shut down, and
12 that James Campbell had been arrested; and Mexican Mafia Member
13 #1 directed RUDY AGUIRRE, SR., to instruct a lawyer to send
14 Mexican Mafia Member #1 a book about the Mexican Mafia and mark
15 it as "confidential."

16     156.  On September 20, 2008, defendant RUDY AGUIRRE, JR.,
17 met with defendant P. CORDERO in Pelican Bay State Prison and
18 discussed the authorization for defendant UPSHAW to collect
19 "taxes," and P. CORDERO asked for authorization from RUDY
20 AGUIRRE, JR., to permit UPSHAW to collect "taxes" on behalf of
21 the Mexican Mafia.

22     157.  On September 21, 2008, defendant RUDY AGUIRRE, JR.,
23 met with Mexican Mafia Member #1 at Pelican Bay State Prison and
24 discussed the June 25, 2008 arrests of Avenues gang members from
25 the Drew Street clique, as well as the manner in which Alex "Pee
26 Wee" Aguirre killed a witness who had testified against Mexican
27 Mafia Member #1, and RUDY AGUIRRE, JR., told Mexican Mafia Member
28 #1 that defendant UPSHAW was collecting "taxes" for the Mexican

1 Mafia and that they were in the process of resuming "tax"

2 collections, which had been disrupted by the June 25, 2008

3 arrests of members of the Drew Street gang.

4     158.  On September 21, 2008, during a meeting at Pelican Bay

5 State Prison, Mexican Mafia Member #1 told defendant RUDY

6 AGUIRRE, JR., that he was concerned that defendant RICHIE AGUIRRE

7 had provided information to law enforcement after RICHIE AGUIRRE

8 and Mexican Mafia Member #2 were arrested for the murder of a

9 gang member.

10     159.  On September 21, 2008, during a meeting at the Pelican

11 Bay State Prison, Mexican Mafia Member #3 directed an unindicted

12 co-conspirator to contact defendants RUDY AGUIRRE, JR., and RUDY

13 AGUIRRE, SR., in order to collect his share of "taxed" proceeds

14 owed to him as a Mexican Mafia leader.

15     160.  On September 21, 2008, during a meeting at Pelican Bay

16 State Prison, defendant P. CORDERO told a third person that he

17 had respect for Mexican Mafia Member #1, and defendant RUDY

18 AGUIRRE, SR., told P. CORDERO that they had been trying to

19 recover the money they paid for Jovita Aguirre's attorney, that

20 defendant UPSHAW would be responsible for handling the situation

21 with the attorney if the attorney would not agree to return the

22 money, and that law enforcement gang units were out and present

23 in the neighborhood.

24     161.  On September 21, 2008, defendants V. MACIAS and R.

25 MACIAS delivered narcotics to an unindicted co-conspirator who

26 was imprisoned at the Pleasant Valley State Prison.

27     162.  On September 22, 2008, by telephone using coded

28 language, defendant V. MACIAS told defendant RODRIGUEZ that V.

MACIAS had instructed a third person to drive RODRIGUEZ so
RODRIGUEZ could collect "tax" payments from narcotics traffickers
in the areas controlled by the Avenues gang.

163.  On September 28, 2008, by telephone using coded
language, defendant VELASQUEZ told defendant RODRIGUEZ that
defendant D. MANCIA wanted to sell narcotics in the area
controlled by the Avenues gang and would contact RODRIGUEZ for
permission to do so.

164.  On September 30, 2008, by telephone using coded
language, defendant R. MACIAS asked defendant V. MACIAS if a
third person had become ill from ingesting the narcotics that R.
MACIAS and V. MACIAS had arranged to smuggle into Pleasant Valley
State Prison.

165.  On October 2, 2008, by telephone using coded language,
defendant R. DE LA CRUZ directed defendant Y. GARCIA to deliver
crack cocaine to him in 15 minutes.

166.  On October 6, 2008, by telephone using coded language,
an unindicted co-conspirator told defendant RODRIGUEZ that she
had been distributing narcotics and paying "taxes" to defendant
UPSHAW, and that she had been contacted by defendant RICHIE
AGUIRRE from prison.

167.  On October 7, 2008, by telephone using coded language,
defendant RODRIGUEZ told defendant R. DE LA CRUZ that RODRIGUEZ
had hidden a gun to prevent it from being discovered by law
enforcement.

168.  On October 12, 2008, near Avenue 38 in the
neighborhood controlled by the Avenues gang, defendant GABRIEL
confronted T.T. and shot at his head, saying to T.T., "Welcome to

1  death, motherfucker!"

2      169.  On October 14, 2008, by telephone using coded
3  language, defendant VELASQUEZ directed defendant R. SALAZAR to
4  provide narcotics to VELASQUEZ.

5      170.  On October 15, 2008, by telephone using coded
6  language, defendant VELASQUEZ arranged to obtain narcotics from
7  defendant R. PINA.

8      171.  On October 16, 2008, by telephone using coded
9  language, defendant R. PINA arranged to provided crack cocaine to
10  defendant VELASQUEZ.

11      172.  On October 16, 2008, by telephone using coded
12  language, defendant VELASQUEZ told defendant J. SILLAS that
13  VELASQUEZ needed to obtain a gun from J. SILLAS, and J. SILLAS
14  told VELASQUEZ that law enforcement officers were in the process
15  of searching his residence and that he intended to run if they
16  found his gun.

17      173.  On October 19, 2008, by telephone using coded
18  language, defendant VELASQUEZ directed defendant Y. GARCIA to
19  deliver narcotics to defendant N. SALAZAR.

20      174.  On October 21, 2008, by telephone using coded
21  language, defendant Y. BARAJAS arranged to obtain one ounce of
22  crack cocaine from defendant VELASQUEZ.

23      175.  On October 24, 2008, by telephone using coded
24  language, defendant REYES arranged with an unindicted co-
25  conspirator to "jump" a prospective Avenues gang member into the
26  "Assassins" clique of the Avenues gang.

27      176.  On October 24, 2008, by telephone using coded
28  language, defendant RODRIGUEZ asked to purchase narcotics from

1  defendant J. HERNANDEZ, and J. HERNANDEZ stated that he was at

2  his house but would need to acquire additional narcotics from his

3  supplier.

4      177.  On October 29, 2008, by telephone using coded

5  language, defendant RODRIGUEZ told defendant J. HERNANDEZ that

6  RODRIGUEZ had two narcotics customers, and J. HERNANDEZ told

7  RODRIGUEZ that he would provide him with an ounce of narcotics

8  for RODRIGUEZ to sell.

9      178.  On October 31, 2008, by telephone using coded

10 language, defendant R. DE LA CRUZ arranged to purchase narcotics

11 from defendant RODRIGUEZ.

12     179.  On November 7, 2008, by telephone using coded

13 language, defendant R. DE LA CRUZ asked an unindicted co-

14 conspirator if law enforcement officers were present in the area.

15     180.  On November 7, 2008, by telephone using coded

16 language, defendant CHAVIRA arranged to obtain a gun from

17 defendant RODRIGUEZ in order to carry out an attack on rival

18 Highland Park gang members and told RODRIGUEZ that he was at the

19 residence of defendant M. ABITIA with a juvenile gang member, and

20 RODRIGUEZ stated that defendant W. ABITIA would go to M. ABITIA's

21 residence in order to accompany CHAVIRA.

22     181.  On November 7, 2008, using text messages by telephone,

23 defendant ERENTREICH and a juvenile gang member identified the

24 location of Highland Park gang members, and ERENTREICH directed

25 the juvenile gang member to shoot them, but the juvenile gang

26 member advised that he did not have a gun.

27     182.  On November 7, 2008, by telephone using coded

28 language, defendant CHAVIRA told defendant RODRIGUEZ that CHAVIRA

was meeting with defendant W. ABITIA, and RODRIGUEZ told defendant G. PINA that CHAVIRA was preparing to attack rival gang members at that time.

183. On November 7, 2008, a juvenile gang member drove a car with defendants CHAVIRA and W. ABITIA, and CHAVIRA possessed a stolen and loaded Ruger .357 caliber handgun, along with a black bandana and picture of a skull (identifying Avenues gang membership) in order to carry out an attack on rival Highland Park gang members.

184. On November 7, 2008, by telephone using coded language, defendant RODRIGUEZ told defendant G. PINA that defendant CHAVIRA had been arrested, and RODRIGUEZ stated that he was concerned that CHAVIRA had been caught with RODRIGUEZ' gun.

185. On November 7, 2008, by telephone using coded language, defendant M. ABITIA told defendant RODRIGUEZ that defendant CHAVIRA and a juvenile gang member had been arrested and that law enforcement officers had also recovered M. ABITIA's cellular telephone.

186. On November 7, 2008, by telephone using coded language, defendant RODRIGUEZ told defendant SALINAS that defendant CHAVIRA and a juvenile gang member had been arrested with RODRIGUEZ' gun.

187. On November 7, 2008, by telephone using coded language, an unidentified female told defendant RODRIGUEZ that defendant W. ABITIA was still hiding from law enforcement and that four or five officers were looking for him.

188. On November 7, 2008, by telephone using coded language, an unidentified female told defendant RODRIGUEZ that

1    defendant M. ABITIA was hiding defendant W. ABITIA from law

2    enforcement, and RODRIGUEZ directed the unidentified female to

3    have W. ABITIA call RODRIGUEZ.

4         189.  On November 7, 2008, by telephone using coded

5    language, defendant M. ABITIA told defendant RODRIGUEZ that

6    defendant W. ABITIA was with M. ABITIA, but that defendant

7    CHAVIRA had been arrested with a gun and taken to the Twin Towers

8    detention facility, and M. ABITIA said that CHAVIRA should have

9    hidden the gun in his pants so that it would not have been seen

10   by law enforcement and also stated that she had falsely told

11   officers that W. ABITIA had been at the mall instead of with

12   CHAVIRA.

13        190.  On November 7, 2008, by telephone using coded

14   language, defendant M. ABITIA told defendant RODRIGUEZ that she

15   believed defendant CHAVIRA would not cooperate with law

16   enforcement, that defendant W. ABITIA had directed others to

17   delete telephone numbers and text messages and break cellular

18   telephones if they were found, and that she was going to get a

19   new cellular telephone after having the cellular telephone

20   provider disconnect and erase the information contained on her

21   other cellular telephone, which had been seized by law

22   enforcement.

23        191.  On November 7, 2008, defendants VEGA and others,

24   distributed heroin and possessed 16 balloons, containing

25   approximately 10.2 grams of heroin packaged for distribution, and

26   $480 in United States currency in the neighborhood controlled by

27   the Avenues gang.

28        192.  On November 7, 2008, by telephone using coded

54

1    language, defendant RODRIGUEZ arranged to obtain crack cocaine

2    from defendant J. HERNANDEZ.

3         193.   On November 8, 2008, by telephone using coded

4    language, defendant RODRIGUEZ told defendant I. VALDEZ that

5    defendant CHAVIRA and a juvenile had been arrested with

6    RODRIGUEZ' gun.

7         194.   On November 21, 2008, by telephone using coded

8    language, an unidentified female told defendant V. ARELLANO that

9    she had methamphetamine for sale, and V. ARELLANO told the

10   unidentified female that defendant VELASQUEZ buys

11   methamphetamine.

12        195.   On November 22, 2008, by telephone using coded

13   language, defendant CELESTE RENTERIA directed a juvenile Avenues

14   gang member to obtain a disposable, "burnout" telephone for her

15   to use to speak to defendant R. DE LA CRUZ, and the juvenile

16   Avenues gang member stated that he would provide the telephone

17   the next day.

18        196.   On November 23, 2008, defendant SALINAS struck Z.O. in

19   the head with a beer bottle.

20        197.   On November 25, 2008, by telephone using coded

21   language, an unidentified co-conspirator directed a juvenile

22   Avenues gang member to provide him with a gun, and the juvenile

23   advised him that he did not have bullets for the gun he wanted.

24        198.   On November 27, 2008, by telephone using coded

25   language, defendant V. ARELLANO asked an unidentified female if

26   she had any methamphetamine for distribution, and the female

27   stated that she was waiting for a new delivery.

28        199.   On November 28, 2008, by telephone using coded

language, defendant VELASQUEZ told defendant D. DE LA CRUZ that VELASQUEZ could provide him with a gun.

200.  On November 28, 2008, by telephone using coded language, defendant D. DE LA CRUZ told defendant VELASQUEZ that D. DE LA CRUZ had obtained narcotics from a drug supplier.

201.  On November 29, 2008, by telephone using coded language, a juvenile Avenues gang member arranged to obtain an assault rifle from another juvenile Avenues gang member, and the first juvenile told the second that the Avenues gang maintained multiple weapons in the neighborhood controlled by the gang.

202.  On November 29, 2008, by telephone using coded language, defendant J. SILLAS told a juvenile Avenues gang member that J. SILLAS had arranged to obtain a .22 caliber gun, and the juvenile told J. SILLAS that he and another juvenile gang member had hidden a gun and would show J. SILLAS where they had hidden it.

203.  On November 30, 2008, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE asked defendant VELASQUEZ if VELASQUEZ had collected $700 in "tax" payments to deliver to RICHIE AGUIRRE, and VELASQUEZ agreed to deliver these illegal proceeds.

204.  On November 30, 2008, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE directed defendant VELASQUEZ to deliver $700 in "tax" payments to defendant N. AGUIRRE, and RICHIE AGUIRRE also told VELASQUEZ that RICHIE AGUIRRE wanted to talk with VELASQUEZ and defendant RODRIGUEZ in order to direct them regarding the collection of "taxes" for the Mexican Mafia and that the Mexican Mafia leaders

1   did not want defendant SOLIS to continue collecting "taxes" for

2   the Mexican Mafia.

3       205.  On November 30, 2008, by telephone hidden in his

4   prison cell and using coded language, defendant RICHIE AGUIRRE

5   directed defendant N. AGUIRRE to collect $700 in "tax" payments,

6   and N. AGUIRRE told RICHIE AGUIRRE that she would take a covert

7   route in collecting the payments.

8       206.  On November 30, 2008, by telephone hidden in his

9   prison cell and using coded language, defendant RICHIE AGUIRRE

10   told defendant RODRIGUEZ that Mexican Mafia Member #1 had been

11   angered by the involvement of defendant SOLIS in the collection

12   of "taxes" for the Mexican Mafia because SOLIS was related to

13   Mexican Mafia Member #2, and Mexican Mafia Member #1 could order

14   RODRIGUEZ, SOLIS, or Mexican Mafia Member #2 killed, but that

15   RICHIE AGUIRRE was awaiting a decision from another Mexican Mafia

16   leader about the decision to use SOLIS.

17       207.  On November 30, 2008, by telephone hidden in his

18   prison cell and using coded language, defendant RICHIE AGUIRRE

19   told defendant RODRIGUEZ that gang members were trying to advance

20   their status with the Mexican Mafia by committing murders and

21   other acts of violence and that he intended to follow the orders

22   issued by the Aguirre family, and RODRIGUEZ assured RICHIE

23   AGUIRRE that RODRIGUEZ was loyal to the Aguirre family, even

24   though RODRIGUEZ knew that defendant SOLIS was providing money to

25   Mexican Mafia Member #2.

26       208.  On December 3, 2008, by telephone hidden in his prison

27   cell and using coded language, defendant RICHIE AGUIRRE told

28   defendant RODRIGUEZ that defendant UPSHAW had called RICHIE

AGUIRRE and that they needed to identify someone who could collect "tax" payments, but that the relatives of Mexican Mafia Member #1 were concerned about collecting the payments.

209. On December 3, 2008, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE directed defendant VELASQUEZ to obtain black tar heroin from defendant RODRIGUEZ, maintain the heroin at VELASQUEZ' residence, and gather and maintain guns as well, and RICHIE AGUIRRE also directed VELASQUEZ to insert heroin into his rectum in order to smuggle it into the Los Angeles County Jail on behalf of the Mexican Mafia.

210. On December 3, 2008, by telephone hidden in defendant RICHIE AGUIRRE's prison cell and using coded language, defendants RODRIGUEZ and RICHIE AGUIRRE discussed the fact that defendant UPSHAW was collecting "taxes" for the Mexican Mafia and that they would need authorization from Mexican Mafia leaders if they were to take action against UPSHAW.

211. On December 4, 2008, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE directed defendant VELASQUEZ to collect $500 from defendant UPSHAW and discuss the collection of "taxes" for the Mexican Mafia with UPSHAW.

212. On December 4, 2008, defendant VELASCO possessed a .22 caliber rifle and fired it at other persons on Cypress Avenue, in Los Angeles, California.

213. On December 6, 2008, defendants J. SILLAS and RECINOS threatened M.Y. and her child for having told law enforcement that M. Y. observed defendant VELASCO shoot at rival gang members

1  on December 4, 2008.

2      214.  On December 7, 2008, by telephone using coded

3  language, defendant D. ALVARADO told defendant VELASQUEZ that D.

4  ALVARADO had identified a group of Highland Park gang members,

5  and VELASQUEZ told D. ALVARADO that VELASQUEZ would direct his

6  sister to drive D. ALVARADO to confront the Highland Park gang

7  members.

8      215.  On December 10, 2008, by telephone using coded

9  language, defendant VELASQUEZ asked defendant RODRIGUEZ if he had

10  obtained guns.

11     216.  On December 10, 2008, by telephone using coded

12  language, defendant VELASQUEZ told defendant RODRIGUEZ that

13  VELASQUEZ had moved all the guns and stored them between hanging

14  clothes at VELASQUEZ' residence.

15     217.  On December 11, 2008, by telephone using coded

16  language, defendant VELASQUEZ told defendant RODRIGUEZ that

17  VELASQUEZ was attempting to store guns at the residence of

18  defendant G. PINA and that the Drew Street neighborhood was

19  heavily patrolled by law enforcement at that time, so VELASQUEZ

20  was concerned about the guns being seized by law enforcement.

21     218.  On December 11, 2008, by telephone using coded

22  language, defendant VELASQUEZ told defendant G. PINA that

23  VELASQUEZ had been trying to store an assault rifle at G. PINA's

24  residence.

25     219.  On December 11, 2008, by telephone using coded

26  language, defendant D. ALVARADO told defendant VELASQUEZ that

27  defendant RODRIGUEZ had warned him that there was an "emergency"

28  because law enforcement officers were conducting searches of

1    their residences.

2         220.  On December 11, 2008, by telephone using coded

3    language, defendant RODRIGUEZ asked defendant VELASQUEZ to

4    identify his location and advise RODRIGUEZ if VELASQUEZ' parole

5    officer had searched his residence, and RODRIGUEZ told VELASQUEZ

6    that law enforcement officers were heavily present in the area

7    and near Avenue 57.

8         221.  On December 11, 2008, by telephone using coded

9    language, defendant RODRIGUEZ directed defendant VELASQUEZ to

10   obtain a gun from another Avenues gang member.

11        222.  On December 11, 2008, defendants VELASQUEZ, RODRIGUEZ,

12   and I. VALDEZ possessed a loaded AR-15 assault rifle, a loaded

13   Norinco SKS 7.62 mm assault rifle, a loaded Mossberg 20-gauge

14   sawed-off shotgun, and ammunition at a residence on Avenue 59 in

15   the area controlled by the Avenues gang.

16        223.  On December 11, 2008, by telephone using coded

17   language, defendant VELASQUEZ told defendant D. ALVARADO that law

18   enforcement officers were searching residences used by Avenues

19   gang members.

20        224.  On December 11, 2008, by telephone using coded

21   language, defendants VELASQUEZ and RODRIGUEZ told defendant

22   RICHIE AGUIRRE that law enforcement officers had searched the

23   residence of defendant I. VALDEZ and seized their assault rifles,

24   but that the narcotics they had stored in the residence had been

25   stored in a manner that would have been difficult for a

26   narcotics-sniffing canine to detect.

27        225.  On December 11, 2008, by telephone using coded

28   language, defendant RODRIGUEZ told defendant RICHIE AGUIRRE that

1 | defendant M. ABITIA had known that the weapons seized at
2 | defendant I. VALDEZ' residence would be found by law enforcement,
3 | and RODRIGUEZ believed M. ABITIA was trying to get RODRIGUEZ to
4 | turn himself in to law enforcement because RODRIGUEZ'
5 | fingerprints would be on all of the guns that had been seized;
6 | and RICHIE AGUIRRE told RODRIGUEZ to check to see if other items
7 | had also been discovered by law enforcement.

8 |     226.  On December 12, 2008, defendant D. ALVARADO fled from
9 | law enforcement officers while in possession of a loaded handgun
10 | in the neighborhood controlled by the Avenues gang.

11 |     227.  On December 15, 2008, by telephone using coded
12 | language, defendant VELASQUEZ directed defendant V. ARELLANO to
13 | meet with defendant N. SALAZAR and instruct N. SALAZAR to falsely
14 | claim to law enforcement officers that VELASQUEZ had been
15 | drinking with N. SALAZAR when Deputy Escalante was murdered in
16 | order to create an alibi for VELASQUEZ' participation in the
17 | murder of Deputy Escalante.

18 |     228.  On December 17, 2008, by telephone using coded
19 | language, a juvenile Avenues gang member arranged to provide
20 | marijuana to a female gang associate in order to have it smuggled
21 | into a California juvenile detention facility.

22 |     229.  On December 18, 2008, by telephone using coded
23 | language, defendant J. HERNANDEZ arranged to purchase a stolen
24 | .40 caliber handgun from an unindicted co-conspirator in exchange
25 | for $450 and methamphetamine, and the co-conspirator told J.
26 | HERNANDEZ that the gun had been stolen from a law enforcement
27 | officer.

28 |     230.  On December 18, 2008, by telephone using coded

1   language, defendant J. HERNANDEZ told defendant O. LOPEZ that he

2   had obtained a handgun, badge, and baton stolen from a Los

3   Angeles Unified School District Police Officer.

4        231.  On December 20, 2008, by telephone using coded

5   language, a juvenile Avenues gang member told another juvenile

6   Avenues gang member that he had delivered MDMA to his mother.

7        232.  On December 20, 2008, by telephone using coded

8   language, defendant J. HERNANDEZ offered to sell the stolen .40

9   caliber handgun and methamphetamine to defendant O. LOPEZ.

10       233.  On December 22, 2008, by telephone using coded

11   language, defendants J. HERNANDEZ and O. LOPEZ arranged to meet,

12   and O. LOPEZ cautioned J. HERNANDEZ to be careful because of the

13   presence of LAPD gang units in the area.

14       234.  On December 22, 2008, by telephone using coded

15   language, defendant O. LOPEZ told defendant TREJO that law

16   enforcement officers might be planning to search defendant J.

17   HERNANDEZ' residence and that J. HERNANDEZ had a Glock handgun at

18   the residence, and TREJO told O. LOPEZ that TREJO was on the

19   freeway and leaving town.

20       235.  On December 22, 2008, by telephone using coded

21   language, defendant O. LOPEZ called other, unidentified co-

22   conspirators and advised them that law enforcement officers were

23   searching their residences, and O. LOPEZ told an unidentified co-

24   conspirator that defendants J. HERNANDEZ, R. MARTINEZ, and O.

25   LOPEZ had an arrangement to deal with drugs they stored at R.

26   MARTINEZ' residence in the event J. HERNANDEZ was arrested.

27       236.  On December 22, 2008, defendants J. HERNANDEZ and O.

28   LOPEZ possessed approximately 6.0 grams of methamphetamine, 7.43

grams of marijuana, a loaded .40 caliber Glock handgun (which had been stolen from a Los Angeles Unified School District Police Officer), a Smith & Wesson .357 caliber revolver, magazines, ammunition, a law enforcement baton, and a hobble restraint at a residence on Wadena Avenue, in Los Angeles, California.

237.  On December 22, 2008, by telephone using coded language, defendant O. LOPEZ spoke to an unidentified co-conspirator over a telephone O. LOPEZ had taken from J. HERNANDEZ following J. HERNANDEZ' arrest, and O. LOPEZ offered to help the unindicted co-conspirator obtain narcotics.

238.  On December 22, 2008, by telephone using coded language, an unidentified co-conspirator told defendant O. LOPEZ that he had spoken with a higher-ranking gang member, and they had agreed that defendant J. HERNANDEZ' narcotics should be given to O. HERNANDEZ.

239.  On December 22, 2008, defendants J. HERNANDEZ, O. LOPEZ, and R. MARTINEZ possessed approximately 14.79 grams of crack cocaine and 5.4 grams of methamphetamine at R. MARTINEZ' residence on Van Horne Avenue, in Los Angeles, California.

240.  On January 13, 2009, defendant RODRIGUEZ drove a stolen black Honda and led law enforcement officers on a high-speed chase through Los Angeles, California.

241.  On January 14, 2009, by telephone using coded language, defendant RECINOS told a juvenile Avenues gang member that a rival Highland Park had threatened an Avenues gang member with a shotgun.

242.  On January 14, 2009, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE

1  coordinated with defendant SOLIS for SOLIS to smuggle heroin and

2  marijuana into Kern Valley State Prison in Delano, California.

3      243.  On January 15, 2009, defendant R. DE LA CRUZ asked an

4  Avenues and Mexican Mafia member to help R. DE LA CRUZ dispose of

5  the gun that Avenues gang members had used to kill Deputy

6  Escalante.

7      244.  On January 17, 2009, by telephone hidden inside his

8  prison cell and using coded language, defendant RICKY AGUIRRE

9  directed an unidentified co-conspirator to open a post office box

10 for RICKY AGUIRRE to receive "tax" payments in exchange for the

11 "work" RICKY AGUIRRE did for them in prison, and RICKY AGUIRRE

12 told the unindicted co-conspirator that he would retaliate

13 against those who did not pay.

14     245.  On January 18, 2009, by telephone and using coded

15 language, defendant SOLIS told defendant RICHIE AGUIRRE that

16 SOLIS had finished counting "taxed" proceeds, and SOLIS stated

17 that SOLIS still needed to collect from one more narcotics

18 trafficker.

19     246.  On January 22, 2009, by telephone using coded

20 language, defendant ALBARRAN told an undercover law enforcement

21 officer who was posing as a Mexican Mafia representative (the

22 "UC") that defendant R. DE LA CRUZ had been in contact with an

23 Avenues and Mexican Mafia leader in order to arrange for the

24 disposal of the gun that Avenues gang members had used to kill

25 Deputy Escalante, and ALBARRAN told the UC that a juvenile

26 Avenues gang member currently had the gun.

27     247.  On January 22, 2009, by telephone using coded

28 language, defendant ALBARRAN told the UC that a juvenile Avenues

gang member had advised ALBARRAN that the gun used to kill Deputy
Escalante was maintained at the residence of defendant C.
RENTERIA and a juvenile Avenues gang member, and that ALBARRAN
would break into the house to retrieve the gun.

248.  On January 22, 2009, by telephone using coded
language, defendant ALBARRAN told a juvenile Avenues gang member
that ALBARRAN needed to retrieve that day the gun which was used
to kill Deputy Escalante, and ALBARRAN directed the juvenile
Avenues gang member to retrieve the gun from the residence of
defendant C. RENTERIA and a juvenile Avenues gang member.

249.  On January 22, 2009, by telephone using coded
language, defendant ALBARRAN directed a juvenile Avenues gang
member to retrieve the gun used to kill Deputy Escalante from the
residence of defendant C. RENTERIA and a juvenile Avenues gang
member, and the juvenile Avenues gang member told ALBARRAN that
he would go to the residence with another juvenile Avenues gang
member in order to retrieve the gun.

250.  On January 22, 2009, by telephone using coded
language, defendant ALBARRAN told the UC that he and a juvenile
Avenues gang member had attempted to retrieve the gun used to
kill Deputy Escalante, but they had been unable to retrieve the
gun; and the juvenile Avenues gang member then told the UC that
they had been unable to find the gun where a second juvenile
Avenues gang member had left it.

251.  On January 22, 2009, by telephone using coded
language, defendant ALBARRAN told the UC that the sister of
defendant C. RENTERIA would let ALBARRAN and other Avenues gang
members into the residence after 8:00 p.m. to search for the gun

1  used to kill Deputy Escalante.

2      252.  On January 22, 2009, by telephone using coded
3  language, defendant CELESTE RENTERIA told defendant C. RENTERIA
4  that defendant ALBARRAN had attempted to recover the gun used to
5  kill Deputy Escalante, but that she did not want to discuss the
6  matter further on the telephone because the call was likely being
7  monitored.

8      253.  On January 23, 2009, by telephone using coded
9  language, defendant RICKY AGUIRRE obtained the address for a post
10  office box that had been established for the collection of drug
11  proceeds and proceeds derived from allowing other inmates to use
12  a smuggled cellular telephone inside Kern Valley State Prison in
13  Delano, California.

14      254.  On January 26, 2009, by telephone using coded
15  language, defendant ALBARRAN told the UC that a juvenile Avenues
16  gang member had disposed of the gun used to kill Deputy
17  Escalante.

18      255.  On January 26, 2009, by telephone using coded
19  language, defendant ALBARRAN told the UC that ALBARRAN had been
20  in the car that was driven by Avenues gang members involved in
21  the murder of Deputy Escalante, but ALBARRAN denied that he was a
22  member of the Avenues gang and claimed that defendant R. DE LA
23  CRUZ allowed ALBARRAN to associate himself with the gang's
24  members.

25      256.  On January 27, 2009, using text messaging by a
26  telephone that was hidden in defendant RICHIE AGUIRRE's prison
27  cell, defendant SOLIS notified defendant RICHIE AGUIRRE that
28  SOLIS had collected "taxes" in the Drew Street neighborhood for

the Mexican Mafia and would also collect "taxes" from a rival gang.

257.  On January 28, 2009, using text messaging by a telephone that was hidden in his prison cell, defendant RICHIE AGUIRRE directed defendant SOLIS to obtain directives for Mexican Mafia activities for RICHIE AGUIRRE.

258.  On January 29, 2009, by telephone using coded language, defendant SOLIS told the UC that SOLIS had been collecting "taxes" in the neighborhood for the Aguirre family, that he was directing the activity of the younger gang members, and that he would try to obtain more information about the gun used by Avenues gang members to kill Deputy Escalante.

259.  On January 30, 2009, by telephone using coded language, defendant SOLIS told the UC that defendant R. SALAZAR and a juvenile Avenues gang member had disposed of the gun that had been used to kill Deputy Escalante.

260.  On February 2, 2009, by telephone using coded language, defendant ERENTREICH and a juvenile Avenues gang member discussed the successful "tagging" on Drew Street, which was used to mark the neighborhood as being controlled by the Avenues gang.

261.  On February 4, 2009, by telephone using coded language, defendant W. ABITIA asked a juvenile Avenues gang member to provide him the name of an unidentified co-conspirator in Echo Park, California, who would be willing to repair guns for the Avenues gang.

262.  On February 4, 2009, defendant W. ABITIA possessed a loaded Smith & Wesson .357 caliber handgun on Figueroa Street, in Los Angeles, California.

263. On February 5, 2009, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE told an unidentified female that she should be proud that her brothers had been featured in a "Gangland" episode about the Avenues gang on the History Channel, that authority within the Mexican Mafia had shifted from Alex Aguirre to RICHIE AGUIRRE, and that the documentary had featured information about a number of Avenues gang murders.

264. On February 7, 2009, by telephone hidden in his prison cell and using coded language, defendant RICKY AGUIRRE and an unidentified co-conspirator discussed money that the co-conspirator had for RICKY AGUIRRE, the post office box where the co-conspirator should send the money, and whether the co-conspirator had heard that RICKY AGUIRRE had stabbed another inmate in Calipatria State Prison.

265. On February 7, 2009, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE asked defendant RICHARD AGUIRRE if he needed more narcotics delivered to him, and RICHIE AGUIRRE told RICHARD AGUIRRE that he had other suppliers who could deliver narcotics to RICHARD AGUIRRE.

266. On February 8, 2009, defendant ERENTREICH and a juvenile Avenues gang robbed J.G. at gunpoint, forced him to surrender his car keys in Alhambra, California, and drove J.G.'s car to the neighborhood controlled by the Avenues gang.

267. On February 8, 2009, by telephone using coded language, defendant BARCENA told a juvenile Avenues gang member that defendants W. ABITIA and ERENTREICH, and a second juvenile Avenues gang member, had been arrested.

268. On February 13, 2009, using text messaging by telephone, defendant M. ABITIA offered to deliver money and a mini-14 assault rifle to defendant E. PEREZ.

269. On February 16, 2009, defendant RICHARD AGUIRRE possessed crack cocaine, "pay and owe" ledgers, and approximately $591 at a residence on Piedmont Avenue, in Los Angeles, California.

270. On February 19, 2009, by telephone using coded language, defendant G. RAMOS told defendant M. ABITIA that G. RAMOS had just returned from tutoring at Homeboy Industries, and M. ABITIA asked G. RAMOS to take an M-14 rifle to an unidentified co-conspirator.

271. On February 19, 2009, by telephone using coded language, defendant M. ABITIA told an unidentified co-conspirator that M. ABITIA needed to retrieve a gun and deliver it to another unidentified co-conspirator.

272. On February 19, 2009, by telephone using coded language, defendant M. ABITIA told defendant SOLIS that she needed to deliver a gun to defendant E. PEREZ.

273. On February 19, 2009, by telephone using coded language, defendant M. ABITIA asked defendant BARCENA about transportation to use to retrieve the weapon.

274. On February 19, 2009, by telephone using coded language, defendant G. RAMOS asked defendant M. ABITIA to deliver a gun to an unidentified co-conspirator, and M. ABITIA told G. RAMOS that the gun would be used as a "backup" weapon, while a different gun would be used to carry out a shooting.

275. On February 20, 2009, by telephone using coded

69

language, defendant M. ABITIA arranged to obtain a gun from defendant BARCENA.

276.  On February 20, 2009, defendant BARCENA possessed a .380 caliber handgun and ammunition in the neighborhood controlled by the Avenues gang.

277.  On February 20, 2009, defendants M. ABITIA and W. ABITIA, and a juvenile Avenues gang member, possessed a Ruger Mini 14 .223 caliber rifle loaded with 19 rounds of full-metal jacket bullets and 3 tracer rounds, a loaded assault rifle, methamphetamine, and a glass pipe inside a van in the neighborhood controlled by the Avenues gang.

278.  On February 20, 2009, by telephone using coded language, defendant N. AGUIRRE told defendant RICHIE AGUIRRE that law enforcement officers had found crack cocaine and arrested RICHARD AGUIRRE, but that she had hidden the cash proceeds before police arrived; RICHIE AGUIRRE said that RICHARD AGUIRRE would claim that other Avenues gang members had owned the narcotics; and N. AGUIRRE stated that she would have falsely claimed the narcotics had belonged to her, in order to impede the investigation, if she had been present.

279.  On February 21, 2009, by telephone hidden in his prison cell, defendant RICHIE AGUIRRE told his daughter not to associate with African-Americans.

280.  On February 22, 2009, by telephone using coded language, defendant E. PEREZ arranged to obtain narcotics from defendant R. MARTINEZ, and R. MARTINEZ directed E. PEREZ to come to her house to conduct a narcotics transaction.

281.  On February 23, 2009, by telephone using coded

language, defendant M. ABITIA told an unidentified female that she and other Avenues gang members had been arrested on February 20, 2009 and charged with weapons and narcotics violations, that officers had seized her Mini-14 rifle, assault rifle, and .380 caliber handgun, and that defendant E. PEREZ suspected that defendant SALINAS' girlfriend had provided the information to law enforcement that led to their arrests.

282. On February 23, 2009, by telephone, defendant ARMSTRONG provided defendant RICKY AGUIRRE with the pin number for an AT&T pre-paid cellular telephone that had been provided to RICKY AGUIRRE, who was incarcerated at Kern Valley State Prison in Delano, California.

283. On February 24, 2009, by telephone using coded language, defendant M. ABITIA told defendant G. RAMOS that it was M. ABITIA's fault that the Mini-14 rifle had been seized by law enforcement when M. ABITIA was arrested on February 20, 2009.

284. On February 25, 2009, by telephone using coded language, defendant G. RAMOS told defendant M. ABITIA that he blamed her for the fact that his Mini-14 rifle and cellular telephone were seized by law enforcement, and M. ABITIA acknowledged that she should have only taken the rifle out if there was going to be a confrontation.

285. On February 25, 2009, using a telephone that had been smuggled into his prison cell, defendant RICKY AGUIRRE thanked defendant ARMSTRONG for sending nude pictures of herself to him and asked her to obtain more pre-paid minutes for him on a cellular telephone he was covertly using while he was incarcerated at Kern Valley State Prison in Delano, California.

71

286.  On February 26, 2009, by telephone hidden in his prison cell and using coded language, defendant RICKY AGUIRRE arranged to obtain methamphetamine from defendant MAGANA, and MAGANA told RICKY AGUIRRE that MAGANA had spoken with defendant SOLIS.

287.  On February 26, 2009, defendant SAGARRA and other unidentified co-conspirators maintained narcotics and firearms at a warehouse on Huntington Drive in Los Angeles, California.

288.  On February 27, 2009, by telephone using coded language, defendant SAGARRA identified himself as "Shadow" and arranged to obtain narcotics from defendant R. MARTINEZ.

289.  On February 27, 2009, by telephone using coded language, defendant M. ABITIA arranged to purchase approximately seven grams of narcotics from defendant R. MARTINEZ, and R. MARTINEZ said that she would sell it for the same price as that previously charged by an unindicted co-conspirator for the same amount of narcotics.

290.  On February 28, 2009, by telephone using coded language, defendant MAGANA arranged to meet with defendant SOLIS in order to deliver methamphetamine to defendants RICHIE AGUIRRE and RICKY AGUIRRE in prison.

291.  On February 28, 2009, by telephone using coded language, defendant SOLIS told defendant RICHIE AGUIRRE that SOLIS planned to meet with defendant MAGANA the next day and that black tar heroin was maintained at a particular location, and RICHIE AGUIRRE told SOLIS that he would call him the next day.

292.  On February 28, 2009, by telephone using coded language, defendant M. ABITIA told defendant G. RAMOS that M.

72

ABITIA would get another gun to G. RAMOS to replace the weapons that had been seized on February 20, 2009.

293. On March 1, 2009, by telephone, defendant SOLIS contacted defendant MAGANA, and MAGANA provided SOLIS with directions to MAGANA's residence.

294. On March 1, 2009, defendant UPSHAW killed Echo Park gang member E.Z., shot at Echo Park gang member W.V., and then shot C.G. to death in front of a residence located on Toland Way, in Los Angeles, California.

295. On March 1, 2009, defendant SOLIS possessed methamphetamine in a car in Upland, California, and SOLIS identified himself to law enforcement officers as an Avenues gang member who uses the gang name "Lil Trigger."

296. On March 1, 2009, by telephone using coded language, an unidentified female told defendant RICHIE AGUIRRE that defendant SOLIS had been arrested for offenses related to his narcotics sales, weapons possession, and gang membership, and RICHIE AGUIRRE told an unidentified female that SOLIS had items for RICHIE AGUIRRE that RICHIE AGUIRRE needed to obtain from SOLIS.

297. On March 1, 2009, by telephone hidden in his prison cell and using coded language, defendant RICKY AGUIRRE told defendant MAGANA that defendant SOLIS had been arrested and had a cellular telephone with their telephone numbers programmed in it at the time of his arrest, and MAGANA told RICKY AGUIRRE that the police had been present in the area when MAGANA met with SOLIS.

298. On March 1, 2009, by telephone using coded language, defendant RICHIE AGUIRRE told an unidentified female that

1 defendant SOLIS had been arrested with narcotics and that he was

2 distressed about his situation.

3      299.   On March 3, 2009, by telephone using coded language,

4 defendant M. ABITIA asked defendant RICHIE AGUIRRE to help her

5 obtain two handguns in order to replace handguns that had been

6 seized from Avenues gang members or discarded after the

7 commission of a crime.

8      300.   On March 3, 2009, by telephone using coded language,

9 defendants R. MARTINEZ and McNeal Mutuc ("Mutuc") arranged to

10 obtain methamphetamine from defendant TREJO, and they asked TREJO

11 if he had an entire ounce of methamphetamine.

12      301.   On March 3, 2009, by telephone using coded language,

13 defendant R. MARTINEZ told defendant TREJO that Mutuc was in the

14 area and that she would also need a scale, and TREJO stated that

15 he would deliver the methamphetamine to Mutuc at that time.

16      302.   On March 3, 2009, by telephone using coded language,

17 an unidentified male called defendant R. MARTINEZ and asked to

18 purchase methamphetamine from her.

19      303.   On March 3, 2009, Mutuc met with defendants R.

20 MARTINEZ and TREJO and obtained methamphetamine, and Mutuc also

21 possessed a digital scale and $807 in United States currency.

22      304.   On March 3, 2009, defendants TREJO and R. MARTINEZ,

23 and Mutuc, possessed approximately 31.6 grams of methamphetamine,

24 and TREJO also possessed heroin, a loaded .40 caliber handgun in

25 his waistband, and $750 in United States currency.

26      305.   On March 3, 2009, by telephone using coded language,

27 an unidentified female called defendant R. MARTINEZ and told R.

28 MARTINEZ that defendant TREJO had been arrested, and R. MARTINEZ

1  told the unidentified female that TREJO was transporting
2  narcotics when he was arrested.

3      306.  On March 3, 2009, by telephone using coded language,
4  defendant R. MARTINEZ asked an unidentified female if she had
5  additional quantities of methamphetamine she could supply, and
6  the unidentified female told R. MARTINEZ that she was not going
7  out that day because she was concerned about the presence of a
8  particular law enforcement officer and raids by law enforcement
9  in the neighborhood.

10     307.  On March 3, 2009, by telephone using coded language,
11  defendant R. MARTINEZ told unidentified co-conspirators that
12  defendant TREJO had been arrested with another gun and
13  methamphetamine in his possession and that she had given TREJO
14  $750 before he was arrested.

15     308.  On March 4, 2009, defendant J. PINA possessed 23
16  rounds of 9 mm ammunition and photographs depicting J. PINA and
17  other gang members displaying gang signs in his residence.

18     309.  On March 4, 2009, by telephone and using coded
19  language, defendant E. PEREZ arranged to purchase narcotics from
20  defendant R. MARTINEZ.

21     310.  On March 6, 2009, by telephone hidden in his prison
22  cell and using coded language, defendant RICHIE AGUIRRE told an
23  unidentified female that his ability to commit and order the
24  commission of crimes from inside prison required him to have a
25  "crew" of gang members and associates, and RICHIE AGUIRRE told a
26  second unidentified female that she should not be a correctional
27  officer because they become corrupted and are used to smuggle
28  narcotics into the prison for the inmates.

311. On March 7, 2009, by telephone using coded language, defendant AVILES arranged to sell a .45 caliber Glock handgun to an unindicted co-conspirator.

312. On March 7, 2009, by telephone using coded language, defendant J. SILLAS told an unindicted co-conspirator not to talk about the crimes of the organization over the telephone and that J. SILLAS would contact him when he obtained a gun.

313. On March 8, 2009, by telephone using coded language, defendant R. PEREZ told defendant M. ABITIA that R. PEREZ had been trying to obtain guns for Avenues gang members, and M. ABITIA said that she was also trying to obtain guns but was concerned about a hearing the following Friday in which her probation might be violated.

314. On March 8, 2009, by telephone using coded language, defendant SOLIS told defendant B. REAL that he was coming to her residence to collect "tax" drug proceeds.

315. On March 9, 2009, by telephone using coded language, defendant M. ABITIA asked defendant R. MARTINEZ to provide M. ABITIA with a sample of the narcotics she had available for sale.

316. On March 11, 2009, by telephone hidden in his prison cell and using coded language, defendant RICHIE AGUIRRE told defendant J. BARAJAS that RICHIE AGUIRRE would direct defendant PARTIDA to purchase two ounces of heroin, and that RICHIE AGUIRRE's co-conspirators would be meeting with him at the prison to smuggle narcotics to him.

317. On March 11, 2009, by telephone using coded language, defendant RICKY AGUIRRE told defendant PARTIDA that RICKY AGUIRRE had arranged for PARTIDA to obtain one or possibly two ounces of

heroin from defendant J. BARAJAS, and PARTIDA agreed to be
available between 6:00 and 6:30 p.m. the following day to conduct
the narcotics transaction.

318.  On March 12, 2009, by telephone using coded language,
defendant J. BARAJAS told defendant RICHIE AGUIRRE that J.
BARAJAS had heroin for him, and RICHIE AGUIRRE told J. BARAJAS
that he did not need to prepare the heroin so it could be
smuggled in Kern Valley State Prison, because defendant PARTIDA
would do so.

319.  On March 12, 2008, by telephone using coded language,
defendant RICKY AGUIRRE directed defendant PARTIDA to contact
defendant J. BARAJAS by text message to coordinate the delivery
of the heroin J. BARAJAS was supplying.

320.  On March 12, 2009, defendant PARTIDA drove from a
residence on Del Carmen Street in Colton, California, to a Bank
of America, and then to a residence on Washington Street in
Riverside, California, where PARTIDA met with defendant J.
BARAJAS and obtained approximately 28.9 grams of heroin.

321.  On March 12, 2009, by telephone using coded language,
defendant J. BARAJAS told defendant RICHIE AGUIRRE that J.
BARAJAS had successfully delivered one ounce of heroin to
defendant PARTIDA, and RICHIE AGUIRRE said that he had not yet
spoken to PARTIDA, because he wanted to speak to J. BARAJAS
first.

322.  On March 13, 2009, by telephone hidden in his prison
cell and using coded language, defendant RICKY AGUIRRE told
defendant J. BARAJAS that he was defendant RICHIE AGUIRRE's
cellmate and that defendant PARTIDA had not yet smuggled the

heroin supplied by J. BARAJAS into Kern Valley State Prison, and
RICKY AGUIRRE provided J. BARAJAS with PARTIDA's full name and
date of birth and asked J. BARAJAS to determine if PARTIDA had
been arrested.

323.  On March 13, 2009, by telephone using coded language,
defendant J. BARAJAS told defendant RICKY AGUIRRE that defendant
PARTIDA had been arrested for possession and transportation of
narcotics, and RICKY AGUIRRE said that he would ask defendant
RICHIE AGUIRRE if he wanted J. BARAJAS to bail PARTIDA out of
jail.

324.  On March 13, 2009, by telephone hidden in his prison
cell and using coded language, defendant RICKY AGUIRRE told
defendant J. BARAJAS that he had spoken to defendant RICHIE
AGUIRRE, that J. BARAJAS should bail defendant PARTIDA out of
jail, and that J. BARAJAS should erase his and RICHIE AGUIRRE's
telephone number from his telephone.

325.  On March 13, 2009, by telephone hidden in his prison
cell and using coded language, defendant RICHIE AGUIRRE told
defendant J. BARAJAS that RICHIE AGUIRRE had directed other co-
conspirators to reimburse J. BARAJAS for the cost of posting bail
for defendant PARTIDA and that RICHIE AGUIRRE had spoken to
PARTIDA's brother, who said that he would also reward J. BARAJAS
for posting bail for PARTIDA.

326.  On March 13, 2009, by telephone hidden in his prison
cell and using coded language, defendant RICHIE AGUIRRE told
defendant J. BARAJAS that defendant PARTIDA was familiar with the
risks of narcotics trafficking because it was not the first time
she had engaged in drug trafficking, and J. BARAJAS stated that

78

1  he did not sell narcotics to many people who purchased large

2  amounts and had not been selling narcotics out of his residence

3  because law enforcement had identified his drug trafficking there

4  on a prior occasion.

5      327.  On March 14, 2009, by telephone using coded language,

6  defendant RICKY AGUIRRE told defendant PARTIDA that he felt

7  responsible for her arrest and advised PARTIDA that she should

8  act emotional and remorseful to persuade the court to be lenient,

9  and PARTIDA described her prior narcotics arrests and charges.

10     328.  On March 15, 2009, by telephone using coded language,

11  defendant SAGARRA identified himself as an Avenues gang member

12  and asked defendant R. MARTINEZ if he could obtain narcotics from

13  her, and R. MARTINEZ directed SAGARRA to call her back later.

14     329.  On March 15, 2009, defendant OLEA posted a message on

15  a "MySpace" webpage encouraging juvenile Avenues gang members to

16  be alert to law enforcement or rival gang members on behalf of

17  the Avenues gang.

18     330.  On March 16, 2009, defendant ARMSTRONG told defendant

19  RICKY AGUIRRE that she did not want to forward text messages to

20  him because she was afraid that it might expose the fact that she

21  had his telephone, so ARMSTRONG read a message to RICKY AGUIRRE

22  and agreed to buy him another $20 pre-paid telephone card.

23     331.  On March 16, 2009, by telephone, defendant ARMSTRONG

24  provided defendant RICKY AGUIRRE with a "pin" number to use to

25  add minutes to the smuggled cellular telephone he was using in

26  prison.

27     332.  On March 16, 2009, by telephone using coded language,

28  defendant C. CRUZ arranged to obtain narcotics from a juvenile

1  Avenues gang member.

2      333.  On March 17, 2009, by telephone using coded language,

3  defendant UPSHAW told defendant C. CORDERO that the daughter and

4  father-in-law of victim C.G. had told law enforcement officers

5  that UPSHAW had killed C.G. on March 1, 2009, and that UPSHAW

6  needed to contact defendants RUDY AGUIRRE, SR., and RUDY AGUIRRE,

7  JR., and also go to Pelican Bay State Prison to meet with Mexican

8  Mafia leaders about the murder; and C. CORDERO warned UPSHAW not

9  to make such statements on the telephone.

10     334.  On March 17, 2009, by telephone using coded language,

11 defendant C. CORDERO told defendant UPSHAW that an unindicted co-

12 conspirator could not go against Mexican Mafia Member #1 in

13 addressing the shootings and murder committed by UPSHAW on March

14 1, 2009, and that the co-conspirator had so advised defendant

15 RUDY AGUIRRE, SR.

16     335.  On March 17, 2009, by telephone using coded language,

17 a juvenile Avenues gang member directed another juvenile Avenues

18 gang member to obtain a gun from defendant G. PINA in order to

19 carry out an attack on rival Highland Park gang members.

20     336.  On March 17, 2009, by telephone using coded language,

21 defendant C. CRUZ arranged to obtain narcotics from a juvenile

22 Avenues gang member, and the juvenile told C. CRUZ that he had a

23 portion of the drugs and that defendant RECINOS had the remaining

24 amount.

25     337.  On March 17, 2009, by telephone using coded language,

26 defendant VELASQUEZ directed defendant V. ARELLANO to connect

27 him, via "three-way" telephone call, to defendant BAILON, and

28 VELASQUEZ asked BAILON to provide VELASQUEZ with heroin inside

80

the Los Angeles County Jail.

338.  On March 17, 2009, by telephone using coded language, defendant VELASQUEZ directed defendant V. ARELLANO to obtain a half-ounce of heroin from defendant BAILON for VELASQUEZ and stated that VELASQUEZ would send money for the heroin.

339.  On March 17, 2009, by telephone using coded language, defendant V. ARELLANO asked defendant BAILON to provide heroin to defendant VELASQUEZ in the Los Angeles County Jail, and BAILON assured VELASQUEZ that he would have it delivered to him.

340.  On March 18, 2009, by telephone using coded language, defendant UPSHAW asked defendant C. CORDERO if she had collected "tax" payments, and C. CORDERO said that she was going back to collect payments in the neighborhood controlled by the Avenues gang and that she had discussed UPSHAW's role in killing C.G. with a Mexican Mafia leader in Pelican Bay State Prison.

341.  On March 18, 2009, by telephone using coded language, defendant M. ABITIA told defendant R. PEREZ that rivals had shot at defendant G. RAMOS and that the M-14 assault rifle had been seized by law enforcement on February 20, 2009, together with an AR-7 assault weapon and .380 caliber handgun.

342.  On March 20, 2009, by telephone using coded language, defendant D. ALVARADO told defendant G. PINA that law enforcement was trying to end the Avenues gang, so they needed to try to avoid attracting attention from law enforcement at that time, and G. PINA discussed strategies for assaulting victims on Drew Street and his desire to raise children into the Avenues gang.

343.  On March 21, 2009, by telephone using coded language, defendant UPSHAW told defendant C. CORDERO that the father of

1  E.Z., who had been shot by UPSHAW, had appeared in court, and

2  UPSHAW asked C. CORDERO to speak with defendant RUDY AGUIRRE,

3  JR., about the status of an Avenues gang member identified as

4  "Malo."

5       344.  On March 21, 2009, by telephone using coded language,

6  defendant C. CORDERO told defendant UPSHAW that law enforcement

7  officers were talking to the children of C.G., whom UPSHAW had

8  killed, about testifying against him, and UPSHAW asked C. CORDERO

9  to talk to defendant RUDY AGUIRRE, JR., in order to confirm the

10  support of Mexican Mafia leaders for UPSHAW.

11       345.  On March 28, 2009, defendant OLEA posted a message on

12  a "MySpace" web page to encourage Avenues gang members and

13  Mexican Mafia associates to communicate via the Internet.

14       346.  On March 30, 2009, defendant V. HERNANDEZ sold

15  marijuana and cocaine on Estara Street in the neighborhood

16  controlled by the Avenues gang.

17       347.  On March 30, 2009, defendant E. PEREZ possessed

18  methamphetamine and a loaded .380 caliber handgun in a portion of

19  Arroyo Seco Park frequented by Avenues gang members.

20       348.  On April 1, 2009, defendant SALINAS possessed a loaded

21  handgun and kidnaped B.Y. in order to force B.Y. to help him

22  escape from law enforcement on York Boulevard in the neighborhood

23  controlled by the Avenues gang.

24       349.  On April 6, 2009, Mexican Mafia Member #1 received a

25  letter from S.A., who confronted Mexican Mafia Member #1 for

26  directing the murder of C.G. in her front yard and in front of

27  her grandchildren.

28       350.  On April 6, 2009, by telephone using coded language,

defendant M. REAL told defendant SOLIS that M. REAL would bring a gun to SOLIS the next morning.

351.  On April 6, 2009, by telephone using coded language, defendant M. ABITIA told a juvenile Avenues gang member that she had been released from custody because she told the judge that she would comply with all the bail conditions imposed if the court were to give her a "second chance."

352.  On April 7, 2009, defendant V. HERNANDEZ sold approximately .30 grams of cocaine in the neighborhood controlled by the Avenues gang.

353.  On April 7, 2009, by telephone using coded language, defendant M. REAL arranged to obtain crack cocaine from defendant SOLIS, and SOLIS asked M. REAL to bring him the gun she had agreed to provide.

354.  On April 8, 2009, defendant C. GONZALEZ sold marijuana and cocaine in the neighborhood controlled by the Avenues gang, and C. GONZALEZ also offered to sell an AK-47 assault rifle when he sold the narcotics.

355.  On April 8, 2009, by telephone using coded language, defendant MARRERO told a juvenile Avenues gang member to assemble the young Avenues gang members and direct them to contribute ten dollars each, per week, in exchange for guns that either MARRERO or defendant RECINOS would deliver to them.

356.  On April 8, 2009, defendant DOMINGA sold approximately .46 grams of crack cocaine in the neighborhood controlled by the Avenues gang.

357.  On April 8, 2009, by telephone using coded language, defendant TRUJILLO arranged to provide one-half ounce of

1  narcotics to defendant SOLIS.

2      358.   On April 9, 2009, by telephone using coded language,

3  defendant MARRERO told defendant J. SILLAS that a juvenile

4  Avenues gang member had told MARRERO that they had enlisted 12

5  new Avenues gang members, that J. SILLAS would be the leader of

6  the new members, and that J. SILLAS should collect money from the

7  new members every week to pay for MARRERO to arm them with guns

8  and J. SILLAS to provide them with spray cans to "tag" the

9  neighborhood to demonstrate control by the Avenues gang.

10      359.   On April 10, 2009, in a text message by telephone,

11  defendant SHUMILO advised defendant M. ABITIA that he had a gun

12  and was in a neighborhood controlled by the rival "Toonerville"

13  gang.

14      360.   On April 11, 2009, by telephone using coded language,

15  defendant UPSHAW told an unidentified female that he was

16  concerned that he had been "green-lighted" by Mexican Mafia

17  leaders over payments owed to defendant RICHIE AGUIRRE and asked

18  for assistance in contacting Mexican Mafia leaders to secure his

19  safety while in the Los Angeles County Jail.

20      361.   On April 13, 2009, by telephone using coded language,

21  defendant SHUMILO asked a juvenile Avenues gang member to provide

22  him with a gun he could use for "gang banging" (i.e., violent

23  attacks against rival gang members and others).

24      362.   On April 13, 2009, in a text message by telephone, a

25  juvenile Avenues gang member offered to sell a 9 mm handgun to

26  defendant SHUMILO for $500, and SHUMILO told the juvenile that he

27  could buy an assault rifle for $500.

28      363.   On April 14, 2009, by telephone using coded language,

84

1 | defendant UPSHAW told defendant C. CORDERO that he would direct
2 | tax collectors to deliver the taxes to C. CORDERO, that deputies
3 | in the jail facility where he was housed had been asking him
4 | questions about Mexican Mafia leaders, including defendants RUDY
5 | AGUIRRE, SR., and Mexican Mafia Member #2, and that he wanted C.
6 | CORDERO to help him contact RUDY AGUIRRE, SR., in order to urge
7 | RUDY AGUIRRE, SR., to support UPSHAW.

8 | 364. On April 15, 2009, defendant V. HERNANDEZ stole a car
9 | on Fletcher Avenue in the neighborhood controlled by the Avenues
10 | gang.

11 | 365. On April 17, 2009, by telephone using coded language,
12 | defendant SHUMILO told a juvenile Avenues gang member that law
13 | enforcement officers were arresting Avenues gang members, but
14 | that SHUMILO had escaped and thrown his gun and was now hiding.

15 | 366. On April 18, 2009, by telephone using coded language,
16 | a juvenile Avenues gang member told an unidentified co-
17 | conspirator that he was directing Avenues gang members to meet at
18 | the home of defendant RECINOS and that he would be directing
19 | members to engage in "gang banging" and stealing cars.

20 | 367. On April 18, 2009, by telephone using coded language,
21 | defendant N. SALAZAR asked defendant RECINOS to obtain
22 | methamphetamine for N. SALAZAR to distribute, and RECINOS put N.
23 | SALAZAR on the telephone with an unidentified co-conspirator,
24 | referred to as "Bobby," who offered to deliver narcotics to N.
25 | SALAZAR.

26 | 368. On April 19, 2009, by telephone using coded language,
27 | defendant RECINOS told an unidentified female that RECINOS had
28 | just "jumped in" three new Avenues gang members.

369.  On April 19, 2009, during a meeting at Pelican Bay State Prison, defendant RUDY AGUIRRE, SR., and Mexican Mafia Member #1 discussed the fact that defendant P. CORDERO had been forced to terminate a meeting at the prison because he was discussing gang activity, and RUDY AGUIRRE, SR., told Mexican Mafia Member #1 that law enforcement officers had been investigating the shooting of three rival gang members by defendant UPSHAW on March 1, 2009, and that law enforcement had arrested defendant RICHARD AGUIRRE.

370.  On April 19, 2009, during a meeting at Pelican Bay State Prison, defendant RUDY AGUIRRE, SR., and Mexican Mafia Member #1 discussed the fact that Mexican Mafia Member #1 could order Avenues gang members into the neighborhood to enforce his directions and the orders of the Mexican Mafia after the March 1, 2009 murder of C.G., and they further discussed that defendant UPSHAW had Mexican Mafia Member #1's support for the murder of C.G.

371.  On April 20, 2009, defendant C. GONZALEZ sold marijuana and cocaine in the neighborhood controlled by the Avenues gang.

372.  On April 20, 2009, defendant SHUMILO possessed a .32 caliber handgun and 16 rounds of ammunition in the neighborhood controlled by the Avenues gang.

373.  On April 20, 2009, defendant DOMINGA sold approximately .56 grams of crack cocaine in the neighborhood controlled by the Avenues gang.

374.  On April 21, 2009, by telephone using coded language, defendant RECINOS told defendant N. SALAZAR that they had "jumped

in" three new Avenues gang members and had posted some of the pictures of this gang initiation on the Internet.

375. On April 22, 2009, defendant DOMINGA sold approximately 2.32 grams of crack cocaine and possessed an additional 31.59 grams of cocaine in the neighborhood controlled by the Avenues gang.

376. On April 22, 2009, by telephone using coded language, defendant UPSHAW directed defendant C. CORDERO to take 18th Street gang members with her and collect "tax" payments in the neighborhood controlled by the Avenues gang, and C. CORDERO discussed the reactions of Mexican Mafia leaders to UPSHAW for having killed C.G. at his home and in front of his children.

377. On April 30, 2009, defendant C. GONZALEZ sold marijuana in the neighborhood controlled by the Avenues gang and discussed plans to kill law enforcement officers who were then patrolling and conducting surveillance in the neighborhood controlled by the Avenues gang.

378. On May 1, 2009, by telephone using coded language, defendant L. MARTINEZ told a juvenile Avenues gang member that L. MARTINEZ was attempting to obtain methamphetamine for distribution, and the juvenile Avenues gang member told L. MARTINEZ that he was with defendant J. BARCENA.

379. On May 3, 2009, by telephone using coded language, defendant C. CORDERO told defendant UPSHAW that Mexican Mafia Member #1 had ordered a "green light" on Echo Park gang members who had been threatening UPSHAW after the shooting of C.G., E.Z., and W.V. and that the victims' families had been directed to abandon their appeals to Mexican Mafia leaders and cooperation

with law enforcement; and UPSHAW told C. CORDERO that defendant RICHIE AGUIRRE was in control of the inmates in the Los Angeles County Jail and the crimes of gang members operating among the general public.

380. On May 5, 2009, defendant J. SILLAS and two co-conspirators robbed S.Z. and G.B. on Fletcher Drive in the neighborhood controlled by the Avenues gang.

381. On May 7, 2009, defendant C. GONZALEZ arranged to distribute approximately 13.67 grams of cocaine.

382. On May 8, 2009, an Avenues gang member shot A.R. with a 12-gauge shotgun.

383. On May 10, 2009, defendant BARCENA "tagged" a wall for the Avenues 57th Street clique and with his gang moniker of "Clowner," to assert the authority of the Avenues gang in the neighborhood around the intersection of Avenue 57 and Omaha Street in Los Angeles, California.

384. On May 17, 2009, by telephone using coded language, defendant SOLIS arranged to collect "tax" payments from defendants B. REAL and ALQUICIRA.

385. On May 17, 2009, by telephone using coded language, defendant SOLIS directed defendant L. MARTINEZ to meet SOLIS behind a residence on Drew Street in order to deliver a "tax" payment to SOLIS.

386. On May 18, 2009, by telephone using coded language, defendant SOLIS provided his newly changed cellular telephone number to defendant M. REAL and instructed her to provide it to certain Avenues gang members, but not to defendant G. PINA, because SOLIS suspected G. PINA's telephone might be monitored by

1    law enforcement.

2        387.   On May 21, 2009, by telephone using coded language,

3    defendant RICKY AGUIRRE told defendant ARMSTRONG that he might

4    not be available to speak with her because he planned to attack

5    another inmate while in prison and could be placed in solitary

6    confinement as a result.

7        388.   On May 22, 2009, by telephone using coded language,

8    defendant RICKY AGUIRRE arranged with Michael Broman ("Broman")

9    to smuggle methamphetamine and marijuana into the California

10   State Prison where RICKY AGUIRRE was incarcerated.

11       389.   On May 22, 2009, by telephone using coded language,

12   defendant RICKY AGUIRRE and Broman discussed the price for

13   quantities of methamphetamine and marijuana, and Broman told

14   RICKY AGUIRRE that Broman's source of supply was having

15   difficulty smuggling the narcotics into the United States from

16   Mexico.

17       390.   On May 22, 2009, by telephone using coded language,

18   defendant RICKY AGUIRRE told Broman that he wanted marijuana and

19   methamphetamine in order to sell it to other inmates inside Kern

20   Valley State Prison, and that Broman should advise him if Broman

21   were to have difficulty obtaining the methamphetamine.

22       391.   On May 23, 2009, by telephone hidden in his prison

23   cell and using coded language, defendant RICKY AGUIRRE told an

24   unindicted co-conspirator that he was preparing to assault

25   another inmate who owed him money, that he had sent defendant

26   ARMSTRONG's address and telephone number to the co-conspirator,

27   that the unindicted co-conspirator should send specific mail to

28   defendant ARMSTRONG's house, and that the co-conspirator should

1  tell a female outside the prison that he had found the Lord and
2  that she should use this as a reason to write to him.

3      392.  On May 24, 2009, by telephone using coded language,
4  defendant L. MARTINEZ asked a juvenile Avenues gang member if
5  defendant G. PINA had delivered a gun, and the juvenile Avenues
6  gang member said that he had not yet retrieved the gun.

7      393.  On May 26, 2009, by telephone using coded language,
8  defendant SOLIS directed defendant M. REAL to meet and identify
9  the persons from whom she had collected tax payments, and M. REAL
10 stated that she would inform SOLIS of the results of these
11 meetings in person in order to avoid detection by law
12 enforcement.

13     394.  On May 26, 2009, defendant SOLIS met with defendant M.
14 REAL, and M. REAL delivered the collected "tax" payments to him.

15     395.  On May 26, 2009, defendants SOLIS and TRUJILLO drove
16 to various residences in Baldwin Park, California, and stole mail
17 from the residences, in order to obtain financial documents and
18 credit cards belonging to the residents.

19     396.  On May 27, 2009, by telephone using coded language,
20 defendant M. ABITIA asked an unidentified co-conspirator to
21 obtain narcotics for M. ABITIA, so that M. ABITIA could hide the
22 narcotics in her navel if she was taken into custody.

23     397.  On May 30, 2009, defendant SOLIS met with Mexican
24 Mafia Member #2 in Corcoran State Prison, and they discussed an
25 unidentified female who had been taking money that Avenues gang
26 members should have delivered to Mexican Mafia Member #2, how the
27 unidentified female's actions were impeding Mexican Mafia Member
28 #2's ability to distribute narcotics inside the prison, and how

the previous shot-caller for the Drew Street gang, Francisco "Pancho" Real, had taken much of the gang down with him when he was prosecuted and had turned things "upside down."

398.  On May 30, 2009, during a meeting inside Corcoran State Prison, defendant SOLIS told Mexican Mafia Member #2 that SOLIS received direction from defendant RICHIE AGUIRRE about the distribution of "taxed" drug proceeds, that SOLIS intended to gain control of Drew Street, that he was loyal to Mexican Mafia Member #2, that he would deliver money collected for RICHIE AGUIRRE to RICHIE AGUIRRE's mother, and that he was paying everyone the money collected for Mexican Mafia leaders.

399.  On May 30, 2009, during a meeting inside Corcoran State Prison, Mexican Mafia Member #2 instructed defendant SOLIS about the methods he should use to smuggle narcotics into the prison and directed SOLIS to recruit gang members into the Drew Street clique of the Avenues gang, and SOLIS told Mexican Mafia Member #2 that defendant VELASQUEZ had killed Deputy Escalante and that law enforcement knew VELASQUEZ was an Avenues gang member.

400.  On May 30, 2009, during a meeting inside Corcoran State Prison, defendant SOLIS and Mexican Mafia Member #2 told defendant SOLIS that Mexican Mafia Member #2 wanted to expand the tax collection in Chevy Chase Park and that another inmate would be released in June who would provide SOLIS with a list of Mexican Mafia members.

401.  On May 31, 2009, by telephone using coded language, defendant TRUJILLO arranged to obtain a gun for defendant SOLIS, and SOLIS asked TRUJILLO if he had more than one gun available.

402.  On June 2, 2009, by telephone using coded language, defendant R. GONZALEZ arranged to provide defendant SOLIS with a gun and said that he would put it in SOLIS' car.

403.  On June 2, 2009, by telephone, defendant SOLIS sent defendant R. GONZALEZ a text message to confirm that SOLIS had received the gun from R. GONZALEZ.

404.  On June 2, 2009, defendant SOLIS possessed a .32 caliber revolver and marijuana in La Puente, California.

405.  On June 2, 2009, defendants B. REAL and JUAN PEDRO RODRIGUEZ sold approximately .30 grams of methamphetamine on Avenue 35 in the neighborhood controlled by the Avenues gang.

406.  On June 3, 2009, defendants Y. GARCIA and JUAN PEDRO RODRIGUEZ sold approximately .36 grams of crack cocaine on Weldon Avenue in the neighborhood controlled by the Avenues gang.

407.  On June 3, 2009, defendants B. REAL and JUAN PEDRO RODRIGUEZ sold approximately .29 grams of methamphetamine on Avenue 35 in the neighborhood controlled by the Avenues gang.

408.  On June 8, 2009, defendant JUAN PEDRO RODRIGUEZ sold approximately .18 grams of methamphetamine in the neighborhood controlled by the Avenues gang.

409.  On June 10, 2009, defendants Y. GARCIA and JUAN PEDRO RODRIGUEZ sold approximately 1.98 grams of crack cocaine in the neighborhood controlled by the Avenues gang.

410.  On June 13, 2009, by telephone using coded language, defendant SOLIS told an unidentified co-conspirator that he obtained multiple credit cards every day and that defendant TRUJILLO searched through stolen mail to obtain the credit cards, which SOLIS then used to pay bills.

411.  On June 15, 2009, by telephone using coded language, defendant R. GONZALEZ told defendant SOLIS that it would be less dangerous for them to get legitimate jobs, instead of collecting taxes for the Mexican Mafia, and SOLIS admonished R. GONZALEZ for discussing their crimes on the telephone.

412.  On June 18, 2009, defendant JUAN PEDRO RODRIGUEZ sold approximately .41 grams of crack cocaine on Avenue 35 in the neighborhood controlled by the Avenues gang.

413.  On June 18, 2009, by telephone using coded language, defendant M. ABITIA arranged to obtain methamphetamine from an unidentified female and indicated that she intended to use a social security check to pay for the methamphetamine.

414.  On June 18, 2009, by telephone using coded language, defendant G. RAMOS arranged to obtain methamphetamine from defendant M. ABITIA, and M. ABITIA told G. RAMOS that she planned to purchase one-quarter ounce of methamphetamine.

415.  On June 18, 2009, by telephone using coded language, defendant M. ABITIA told her juvenile son that she was attempting to obtain methamphetamine for defendant G. RAMOS, and M. ABITIA agreed to obtain an additional quantity for her juvenile son.

416.  On June 21, 2009, by telephone using coded language, defendant M. ABITIA told her other son, defendant W. ABITIA, that she would attempt to obtain a 12-gauge shotgun for him for $200.

417.  On June 21, 2009, by telephone using coded language, defendant M. ABITIA asked defendant G. RAMOS if he still had the shotgun that he was willing to sell for $150, because she had arranged to sell it to her son, defendant W. ABITIA, for $200, and they could make $50 on the deal.

93

418.  On June 21, 2009, by telephone using coded language, defendant M. ABITIA told defendant W. ABITIA that she had obtained the shotgun to sell him.

419.  On June 22, 2009, by telephone using coded language, defendants SOLIS and M. REAL exchanged text messages in which M. REAL advised SOLIS that M. REAL had identified two new narcotics traffickers in the neighborhood controlled by the Avenues gang who had not been paying the required "tax" payments to M. REAL for SOLIS, and SOLIS advised M. REAL that he would pursue more information about the new traffickers.

420.  On June 23, 2009, defendants ALQUICIRA and JUAN PEDRO RODRIGUEZ sold approximately 2.86 grams of methamphetamine in the neighborhood controlled by the Avenues gang.

421.  On June 23, 2009, defendant Y. GARCIA sold approximately 1.42 grams of crack cocaine on Weldon Avenue in the neighborhood controlled by the Avenues gang.

422.  On June 24, 2009, defendant Y. GARCIA sold approximately 13.37 grams of crack cocaine on Weldon Avenue in the neighborhood controlled by the Avenues gang.

423.  On June 24, 2009, by telephone using coded language, defendant M. REAL advised defendant SOLIS that M. REAL would finish collecting the extortionate "tax" payments from narcotics traffickers in the neighborhood controlled by the Avenues gang and would deliver these illegal proceeds to SOLIS the following day, and SOLIS advised M. REAL that he would speak to an Avenues gang member who had recently been released from custody about the payment he would owe since he had resumed distributing narcotics.

424.  On June 24, 2009, defendant ALQUICIRA sold

94

approximately 1.2 grams of methamphetamine on Avenue 35 in the neighborhood controlled by the Avenues gang.

425.  On July 7, 2009, defendant AVILES told a juvenile Avenues gang member that AVILES had been unable to obtain bullets for AVILES' .357 caliber handgun from a "Big 5" sporting goods store because he did not have documentation for the gun, and the juvenile told AVILES that he would provide AVILES with .38 caliber bullets for the gun.

426.  On July 17, 2009, defendant D. CRUZ possessed a loaded Sig Sauer 9mm handgun inside his vehicle in Montebello, California.

427.  On July 27, 2009, defendant C. RENTERIA and an unindicted co-conspirator sold crack cocaine in the neighborhood controlled by the Avenues gang.

428.  On August 17, 2009, defendants J. PINA and CARLIN, and other unidentified co-conspirators confronted J.R.P. and J.T. and demanded that they identify the location of video surveillance cameras in an apartment complex on Drew Street, which had been installed pursuant to a court order to monitor gang activity in the neighborhood controlled by the Avenues gang; and J. PINA, CARLIN, and the co-conspirators then attempted to kill J.R.P. and J.T. by shooting at them.

429.  On August 22, 2009, defendants J. PINA and CARLIN beat and shot E.V. on Drew Street in the neighborhood controlled by the Avenues gang.

430.  On August 23, 2009, defendant J. PINA shot M.G. on Drew Street in the neighborhood controlled by the Avenues gang.

431.  On August 23, 2009, defendants J. PINA and CARLIN

1  killed I.P. on Drew Street in the neighborhood controlled by the
2  Avenues gang.

3      432.  On August 26, 2009, by telephone using coded language,
4  defendant OLEA told an unindicted co-conspirator that he had
5  received authorization to use "taxed" proceeds to pay for a
6  citation, and OLEA directed the unindicted co-conspirator to
7  advise a Mexican Mafia representative that OLEA had been arrested
8  but that he had secured "taxed" proceeds that he had collected in
9  the neighborhood controlled by the Avenues gang.

10     433.  On August 26, 2009, by telephone using coded language,
11 defendant L. MARTINEZ told defendant G. PINA that L. MARTINEZ had
12 obtained a gun from defendant R. PINA, provided a "burnout"
13 telephone number to defendant J. PINA, cut his hair, and fled to
14 San Diego, all in order to avoid arrest in Los Angeles; and G.
15 PINA stated that he had swallowed a quantity of narcotics when he
16 was arrested in order to prevent the narcotics from being located
17 by law enforcement.

18     434.  On August 27, 2009, by telephone using coded language,
19 defendant CARLIN told a female identified as "Jasmine" that he
20 was facing multiple life sentences after the shooting of persons
21 in the neighborhood controlled by the Avenues gang, and Jasmine
22 tried to create an alibi for CARLIN and told CARLIN that she had
23 made contact with one of the shooting victims.

24     435.  On August 27, 2009, by telephone using coded language,
25 defendant J. PINA spoke to "Jasmine" and told her to direct
26 defendant CARLIN not to speak about their crimes on the
27 telephone, because law enforcement would be monitoring the calls,
28 and that J. PINA had spoken with defendant OLEA.

436.  On August 27, 2009, by telephone using coded language, defendant OLEA told a female identified as "Yanelli" to warn L. MARTINEZ that L. MARTINEZ would be arrested if he were located by law enforcement and also told Yanelli to contact an unidentified co-conspirator and direct the co-conspirator to deliver "taxed" proceeds to Yanelli.

437.  On August 27, 2009, by telephone using coded language, defendant OLEA told defendant L. MARTINEZ that law enforcement had searched his house and found a knife but had not found his gun, which OLEA said was well-hidden, and L. MARTINEZ told OLEA that defendant BAILON and members of the Avenues gang "Assassins" clique wanted to collect "taxes" in the portion of Northeast Los Angeles where OLEA and L. MARTINEZ had been collecting.

438.  On August 27, 2009, by telephone using coded language, defendant L. MARTINEZ told defendant OLEA that defendant BAILON had conducted a meeting with Avenues gang members, and L. MARTINEZ asked OLEA if OLEA wanted him to contact a Mexican Mafia representative to address the situation regarding the collection of "tax" payments in the neighborhood controlled by the Avenues gang.

439.  On August 27, 2009, by telephone using coded language, defendants OLEA and L. MARTINEZ asked an unidentified co-conspirator, identified as "C," to identify the person who was then responsible for collecting "taxes" in Avenues gang territory, and OLEA stated that he had hidden the "taxes" that he had collected.

440.  On August 27, 2009, by telephone using coded language, defendant L. MARTINEZ told an unidentified co-conspirator that L.

1  MARTINEZ planned to return to Avenues gang territory by the
2  weekend and that another co-conspirator had maintained a book
3  that identified the persons to be taxed; and the unidentified co-
4  conspirator advised L. MARTINEZ that he would try to obtain the
5  book.

6      441.  On August 27, 2009, defendant OLEA confronted an
7  Avenues gang member, identified as "Hector," in a detention
8  facility, and OLEA demanded to know why the gang member had not
9  yet contact OLEA in light of OLEA's leadership position in the
10 Avenues gang.

11     442.  On August 27, 2009, by telephone using coded language,
12 defendant OLEA asked "Yanelli" if she had finished hiding weapons
13 for him, and defendant L. MARTINEZ asked OLEA to send a greeting
14 on his behalf to all other Avenues gang members.

15     443.  On August 27, 2009, by telephone using coded language,
16 defendant J. PINA told defendant L. MARTINEZ that J. PINA was
17 facing two life sentences and defendant CARLIN was facing one,
18 but that he was hopeful he could be charged with assault with a
19 deadly weapon; and L. MARTINEZ told J. PINA that L. MARTINEZ
20 would be paid a substantial amount of money to participate in a
21 transaction once L. MARTINEZ was released from custody.

22     444.  On August 27, 2009, by telephone using coded language,
23 defendant J. PINA told defendant L. MARTINEZ that L. MARTINEZ
24 should obtain a large gun from defendant R. PINA when L. MARTINEZ
25 was released from custody, and L. MARTINEZ told J. PINA that the
26 large gun had already been dismantled so that it would not be
27 identified by law enforcement.

28     445.  On August 27, 2009, by telephone using coded language,

1 defendant L. MARTINEZ told defendant J. PINA that defendant G.

2 PINA had obtained narcotics from J. PINA and that a co-

3 conspirator who had been responsible for counter-surveillance had

4 lost $50,000 during a transaction, but that another transaction

5 was planned involving a large amount of money.

6     446.  On August 27, 2009, by telephone using coded language,

7 defendants J. PINA and L. MARTINEZ discussed how J. PINA and

8 defendant CARLIN were apprehended by law enforcement after the

9 murder of I.P., and J. PINA told L. MARTINEZ that CARLIN had

10 I.P.'s cellular telephone in his possession when they were

11 arrested, because I.P. tried to use his cellular telephone to

12 call for help when J. PINA and CARLIN attacked him, so J. PINA

13 and CARLIN took it from I.P. when they killed him.

14     447. On September 11, 2009, defendant L. MARTINEZ possessed

15 a Smith and Wesson .38 caliber handgun and a Smith and Wesson

16 .357 caliber revolver and used them to threaten family members in

17 the neighborhood controlled by the Avenues gang.

18

19             THE GRAND JURY FURTHER ALLEGES THAT:

20     1.  Beginning on a date unknown and continuing to on or

21 about September 17, 2009, in Los Angeles County, within the

22 Central District of California, defendants RUDY AGUIRRE, JR.,

23 RICHIE AGUIRRE, RUDY AGUIRRE, SR., SOLIS, RODRIGUEZ, VELASQUEZ,

24 G. HERNANDEZ, ALBARRAN, R. SALAZAR, R. DE LA CRUZ, SALINAS, VEGA,

25 C. RENTERIA, RICKY AGUIRRE, UPSHAW, P. CORDERO, RICHARD AGUIRRE,

26 L. MARTINEZ, R. SORIANO, C. CRUZ, I. VALDEZ, R. PEREZ, M. ABITIA,

27 BARCENA, ERENTREICH, FAJARDO, C. CORDERO, E. PEREZ, BAILON,

28 MARRERO, REYES, V. HERNANDEZ, PINTO, J. SILLAS, Y. GARCIA, OLEA,

1  G. PINA, J. PINA, R. PINA, MORA, G. RAMOS, Y. BARAJAS, RECINOS,
2  ARMSTRONG, D. MANCIA, B. NUNEZ, MIRANDA, CELESTE RENTERIA,
3  PELAYO, GABRIEL, SHUMILO, J. PEREZ, AVILES, SAGARRA, A. MARTINEZ,
4  N. SALAZAR, R. GONZALEZ, D. DE LA CRUZ, J. ANGUIANO, RICHARD
5  PENA, D. ALVARADO, W. ABITIA, G. PINEDA, VELASCO, CHAVIRA, D.
6  CRUZ, CARLIN, M. REAL, C. GONZALEZ, J. HERNANDEZ, O. LOPEZ,
7  TREJO, R. MARTINEZ, J. BARAJAS, TRUJILLO, MAGANA, PARTIDA,
8  DOMINGA, V. MACIAS, R. MACIAS, N. AGUIRRE, V. ARELLANO, ARACELI
9  ALBARRAN, B. REAL, ALQUICIRA, and JUAN PEDRO RODRIGUEZ, and
10 others, known and unknown to the Grand Jury, knowingly and
11 intentionally conspired and agreed with each other to distribute
12 at least 50 grams of a mixture or substance containing a
13 detectable amount of cocaine base in the form of crack cocaine
14 ("crack cocaine"), a schedule II narcotic drug controlled
15 substance; at least five grams of a mixture or substance
16 containing a detectable amount of crack cocaine, a schedule II
17 narcotic drug controlled substance; at least 500 grams of a
18 mixture or substance containing a detectable amount of cocaine, a
19 schedule II narcotic drug controlled substance; at least 50 grams
20 of methamphetamine, a schedule II controlled substance; at least
21 five grams of methamphetamine, a schedule II controlled
22 substance; at least one kilogram of a mixture or substance
23 containing a detectable amount of heroin, a schedule I narcotic
24 drug controlled substance; and at least 100 grams of a mixture or
25 substance containing a detectable amount of heroin, a schedule I
26 narcotic drug controlled substance, all in violation of Title 21,
27 United States Code, Sections 846, 841(a)(1), 841(b)(1)(A), and
28 841(b)(1)(B).

1      2.  On or about March 8, 2005, in Los Angeles County, within

2  the Central District of California, defendant BAILON unlawfully,

3  willfully, deliberately, and with premeditation attempted to kill

4  with malice aforethought K.D., in violation of California Penal

5  Code Sections 31, 187, 189, and 664.

6      3.  Beginning on a date unknown and continuing to on or

7  about October 8, 2006, in Los Angeles County, within the Central

8  District of California, defendants C. RENTERIA and A. MARTINEZ,

9  and others, unlawfully, willfully, deliberately, and with

10  premeditation conspired to kill with malice aforethought rival

11  gang member F.C., in violation of California Penal Code Sections

12  21a, 182, 187, and 189.

13      4.  Beginning on a date unknown and continuing to on or

14  about October 8, 2006, in Los Angeles County, within the Central

15  District of California, defendants C. RENTERIA and A. MARTINEZ,

16  and others, unlawfully, willfully, deliberately, and with

17  premeditation killed with malice aforethought rival gang member

18  F.C., in violation of California Penal Code Sections 21a, 31,

19  187, and 189.

20      5.  Beginning on a date unknown and continuing to on or

21  about June 22, 2007, in Los Angeles County, within the Central

22  District of California, defendant SALINAS and others, unlawfully,

23  willfully, deliberately, and with premeditation conspired to kill

24  with malice aforethought rival gang member M.L., in violation of

25  California Penal Code Sections 21a, 182, 187, and 189.

26      6.  On or about June 22, 2007, in Los Angeles County, within

27  the Central District of California, defendant SALINAS and others,

28  unlawfully, willfully, deliberately, and with premeditation

killed with malice aforethought rival gang member M.L., in

violation of California Penal Code Sections 21a, 31, 187, and

189.

7.   On or about June 30, 2007, in Los Angeles County, within

the Central District of California, defendants C. RENTERIA, C.

CRUZ, and D. CRUZ, and others, unlawfully, willfully,

deliberately, and with premeditation attempted to kill with

malice aforethought L.O. and R.J., in violation of California

Penal Code Sections 31, 187, 189, and 664.

8.   Beginning on a date unknown and continuing to on or

about January 3, 2008, in Los Angeles County, within the Central

District of California, defendants RUDY AGUIRRE, JR., SALINAS,

and VEGA, and others, unlawfully, willfully, deliberately, and

with premeditation conspired to kill with malice aforethought

rival gang member H.H., in violation of California Penal Code

Sections 21a, 182, 187, and 189.

9.   On or about January 3, 2008, in Los Angeles County,

within the Central District of California, defendants RUDY

AGUIRRE, JR., SALINAS, and VEGA, and others, unlawfully,

willfully, deliberately, and with premeditation killed with

malice aforethought rival gang member H.H., in violation of

California Penal Code Sections 21a, 31, 187, and 189.

10.   Beginning on a date unknown and continuing to on or

about August 2, 2008, in Los Angeles County, within the Central

District of California, defendants VELASQUEZ, G. HERNANDEZ,

ALBARRAN, R. DE LA CRUZ, and R. SALAZAR, and others, unlawfully,

willfully, deliberately, and with premeditation conspired to kill

with malice aforethought Los Angeles County Sheriff's Deputy Juan

Escalante, in violation of California Penal Code Sections 21a, 182, 187, and 189.

11.  On or about August 2, 2008, in Los Angeles County, within the Central District of California, defendants VELASQUEZ, G. HERNANDEZ, ALBARRAN, R. SALAZAR, and R. DE LA CRUZ, and others, unlawfully, willfully, deliberately, and with premeditation killed with malice aforethought Los Angeles County Sheriff's Deputy Juan Escalante, in violation of California Penal Code Sections 21a, 31, 187, and 189.

12.  On or about October 12, 2008, in Los Angeles County, within the Central District of California, defendant GABRIEL and others, unlawfully, willfully, deliberately, and with premeditation attempted to kill with malice aforethought T.T., in violation of California Penal Code Sections 31, 187, 189, and 664.

13.  Beginning on a date unknown and continuing to on or about November 7, 2008, in Los Angeles County, within the Central District of California, defendants RODRIGUEZ, W. ABITIA, and CHAVIRA, and others, unlawfully, willfully, deliberately, and with premeditation conspired to kill with malice aforethought rival gang members, in violation of California Penal Code Sections 21a, 182, 187, and 189.

14.  On or about December 4, 2008, in Los Angeles County, within the Central District of California, defendant VELASCO and others, unlawfully, willfully, deliberately, and with premeditation attempted to kill rival gang members, in violation of California Penal Code Sections 31, 187, 189, and 664.

15.  On or about February 19, 2009, in Los Angeles County,

within the Central District of California, defendants M. ABITIA

and G. RAMOS, and others, unlawfully, willfully, deliberately,

and with premeditation conspired to kill with malice aforethought

rival gang members, in violation of California Penal Code

Sections 21a, 182, 187, and 189.

16.  On or about March 1, 2009, in Los Angeles County,

within the Central District of California, defendant UPSHAW

unlawfully, willfully, deliberately, and with premeditation

killed with malice aforethought C.G., in violation of California

Penal Code Sections 21a, 31, 187, and 189.

17.  On or about March 1, 2009, in Los Angeles County,

within the Central District of California, defendant UPSHAW

unlawfully, willfully, deliberately, and with premeditation

killed with malice aforethought E.Z., in violation of California

Penal Code Sections 31, 187, and 189.

18.  On or about March 1, 2009, in Los Angeles County,

within the Central District of California, defendant UPSHAW

unlawfully, willfully, deliberately, and with premeditation

attempted to kill with malice aforethought W.V., in violation of

California Penal Code Sections 31, 187, 189, and 664.

19.  On or about August 17, 2009, in Los Angeles County,

within the Central District of California, defendants J. PINA and

CARLIN, and others, unlawfully, willfully, deliberately, and with

premeditation attempted to kill with malice aforethought J.R.P.

and J.T., in violation of California Penal Code Sections 31, 187,

189, and 664.

20.  On or about August 22, 2009, in Los Angeles County,

within the Central District of California, defendants J. PINA and

CARLIN, and others, unlawfully, willfully, deliberately, and with
premeditation attempted to kill with malice aforethought E.V., in
violation of California Penal Code Sections 31, 187, 189, and
664.

21. On or about August 23, 2009, in Los Angeles County,
within the Central District of California, defendant J. PINA
unlawfully, willfully, deliberately, and with premeditation
attempted to kill with malice aforethought M.G., in violation of
California Penal Code Sections 31, 187, 189, and 664.

22. On or about August 23, 2009, in Los Angeles County,
within the Central District of California, defendants J. PINA and
CARLIN willfully, deliberately, and with premeditation killed
with malice aforethought I.P., in violation of California Penal
Code Sections 21a, 31, 187, and 189.

(All in violation of Title 18, United States Code, Section
1962(d).)

COUNT TWO

[18 U.S.C. § 1962(c)]

1.  Paragraphs One through Nineteen of the General
Allegations are re-alleged and incorporated by reference as
though fully set forth herein.

### THE RACKETEERING OFFENSE

2.  Beginning on a date unknown and continuing to on or
about September 17, 2009, in Los Angeles County, within the
Central District of California, and elsewhere, defendants RUDY
AGUIRRE, JR., RICHIE AGUIRRE, SOLIS, RODRIGUEZ, VELASQUEZ, G.
HERNANDEZ, ALBARRAN, R. SALAZAR, R. DE LA CRUZ, SALINAS, VEGA, C.
RENTERIA, RICKY AGUIRRE, UPSHAW, P. CORDERO, RICHARD AGUIRRE, L.
MARTINEZ, R. SORIANO, C. CRUZ, M. ABITIA, ERENTREICH, C. CORDERO,
E. PEREZ, BAILON, MARRERO, V. HERNANDEZ, PINTO, J. SILLAS, Y.
GARCIA, OLEA, G. PINA, J. PINA, R. PINA, G. RAMOS, Y. BARAJAS,
RECINOS, D. MANCIA, B. NUNEZ, PELAYO, A. MARTINEZ, RICHARD PENA,
W. ABITIA, G. PINEDA, CHAVIRA, D. CRUZ, CARLIN, M. REAL, C.
GONZALEZ, J. HERNANDEZ, O. LOPEZ, TREJO, R. MARTINEZ, J. BARAJAS,
MAGANA, PARTIDA, DOMINGA, B. REAL, ALQUICIRA, and JUAN PEDRO
RODRIGUEZ, and others, known and unknown to the Grand Jury, being
persons employed by and associated with the Avenues criminal
enterprise, which was an enterprise engaged in, and the
activities of which affected, interstate and foreign commerce,
unlawfully and knowingly did conduct and participate, directly
and indirectly, in the conduct of the affairs of that enterprise,
through a pattern of racketeering activity, that is, through the
commission of the acts set forth below.

//

106

1    THE PATTERN OF RACKETEERING ACTIVITY

2        3.   The pattern of racketeering activity, as defined in

3    Title 18, United States Code, Sections 1961(1) and 1961(5),

4    consisted of the following acts:

5    Racketeering Act One

6    Conspiracy to Distribute Narcotics

7        4.   Beginning on a date unknown to the Grand Jury and

8    continuing to on or about September 17, 2009, in Los Angeles

9    County, within the Central District of California, and elsewhere,

10   defendants RUDY AGUIRRE, JR., RICHIE AGUIRRE, SOLIS, RODRIGUEZ,

11   VELASQUEZ, G. HERNANDEZ, ALBARRAN, R. SALAZAR, R. DE LA CRUZ,

12   SALINAS, VEGA, C. RENTERIA, RICKY AGUIRRE, UPSHAW, P. CORDERO,

13   RICHARD AGUIRRE, L. MARTINEZ, R. SORIANO, C. CRUZ, M. ABITIA,

14   ERENTREICH, C. CORDERO, E. PEREZ, BAILON, MARRERO, V. HERNANDEZ,

15   PINTO, J. SILLAS, Y. GARCIA, OLEA, G. PINA, J. PINA, R. PINA, G.

16   RAMOS, Y. BARAJAS, RECINOS, D. MANCIA, B. NUNEZ, PELAYO, A.

17   MARTINEZ, RICHARD PENA, W. ABITIA, G. PINEDA, CHAVIRA, D. CRUZ,

18   CARLIN, M. REAL, C. GONZALEZ, J. HERNANDEZ, O. LOPEZ, TREJO, R.

19   MARTINEZ, J. BARAJAS, MAGANA, PARTIDA, DOMINGA, B. REAL,

20   ALQUICIRA, and JUAN PEDRO RODRIGUEZ, and others, known and

21   unknown to the Grand Jury, conspired and agreed with each other

22   to knowingly and intentionally commit the following offenses:

23        a.   To distribute at least 50 grams of a mixture or

24   substance containing a detectable amount of cocaine base in the

25   form of crack cocaine ("crack cocaine"), a schedule II narcotic

26   drug controlled substance, in violation of Title 21, United

27   States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii);

28        b.   To distribute at least five grams of a mixture or

substance containing a detectable amount of crack cocaine, a

schedule II narcotic drug controlled substance, in violation of

Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(B)(iii);

      c.  To distribute at least 500 grams of a mixture or

substance containing a detectable amount of cocaine, a schedule

II narcotic drug controlled substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii);

      d.  To distribute at least 50 grams of actual

methamphetamine, a schedule II controlled substance, in violation

of Title 21, United States Code, Section 841(a)(1) and

841(b)(1)(A)(viii);

      e.  To distribute at least five grams of actual

methamphetamine, a schedule II controlled substance, in violation

of Title 21, United States Code, Section 841(a)(1) and

841(b)(1)(B)(viii);

      f.  To distribute at least one kilogram of a mixture

or substance containing a detectable amount of heroin, a schedule

I narcotic drug controlled substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i); and

      g.  To distribute at least 100 grams of a mixture or

substance containing a detectable amount of heroin, a schedule I

narcotic drug controlled substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(B)(i).

Racketeering Act Two

Conspiracy to Commit Money Laundering

    5.  Beginning on a date unknown and continuing until on or

about September 17, 2009, in Los Angeles County, within the

1  Central District of California, and elsewhere, defendants RUDY

2  AGUIRRE, JR., RICHIE AGUIRRE, SOLIS, RODRIGUEZ, VELASQUEZ,

3  SALINAS, VEGA, UPSHAW, P. CORDERO, L. MARTINEZ, C. CORDERO,

4  BAILON, MARRERO, PINTO, Y. GARCIA, OLEA, RECINOS, G. PINEDA, M.

5  REAL, J. BARAJAS, and B. REAL, and others, known and unknown to

6  the Grand Jury, knowingly and intentionally conspired and agreed

7  with each other to conduct financial transactions, knowing that

8  the property involved in the financial transactions represented

9  the proceeds of some form of unlawful activity, and which

10 property was, in fact, the proceeds of specified unlawful

11 activity, that is, robbery, extortion, identity theft, and

12 conspiracy to distribute crack cocaine, cocaine, methamphetamine,

13 and heroin, with the intent to promote the carrying on of said

14 specified unlawful activity, and to conceal and disguise the

15 nature, location, source, ownership, and control of the proceeds

16 of said specified unlawful activity, in violation of Title 18,

17 United States Code, Sections 1956(a)(1)(A)(i) and

18 1956(a)(1)(B)(i).

19 <u>Racketeering Act Three</u>

20 <u>Possession with Intent to Distribute Cocaine</u>

21     6.  On or about July 8, 1999, in Los Angeles County, within

22 the Central District of California, defendant MARRERO knowingly

23 and intentionally possessed with the intent to distribute

24 cocaine, a schedule II narcotic drug controlled substance, in

25 violation of Title 21, United States Code, Section 841(a)(1).

26 <u>Racketeering Act Four</u>

27 <u>Threat to Commit Murder</u>

28     7.  On or about September 5, 2000, in Los Angeles County,

1 within the Central District of California, defendant VEGA

2 committed a threat involving murder, namely, VEGA knowingly

3 threatened C.B. and V.H. with a firearm, in violation of

4 California Penal Code Sections 422 and 187.

5 <u>Racketeering Act Five</u>

6 <u>Possession with Intent to Distribute Methamphetamine</u>

7     8.  On or about April 7, 2003, in Los Angeles County, within

8 the Central District of California, defendant R. SORIANO

9 knowingly and intentionally possessed with the intent to

10 distribute methamphetamine, a schedule II controlled substance,

11 in violation of Title 21, United States Code, Section 841(a)(1).

12 <u>Racketeering Act Six</u>

13 <u>Possession with Intent to Distribute Crack Cocaine</u>

14     9.  On or about March 3, 2004, in Los Angeles County, within

15 the Central District of California, defendants VELASQUEZ and G.

16 PINA knowingly and intentionally possessed with the intent to

17 distribute crack cocaine, a schedule II narcotic drug controlled

18 substance, in violation of Title 21, United States Code, Section

19 841(a)(1).

20 <u>Racketeering Act Seven</u>

21 <u>Attempted Murder of K.D.</u>

22     10.  On or about March 8, 2005, in Los Angeles County,

23 within the Central District of California, defendant BAILON and

24 others, unlawfully, willfully, deliberately, and with

25 premeditation, aided, abetted, advised, encouraged, and otherwise

26 participated in the unlawful attempt to kill with malice

27 aforethought K.D., in violation of California Penal Code Sections

28 31, 664, 187, and 189.